METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY
*vs.* COMMISSIONER OF INSURANCE.

Suffolk.  November 5, 1980. — February 11, 1981.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Insurance,* Motor vehicle liability insurance, Commissioner of Insurance,
Rate setting.  *Administrative Law,* Agency interpretation of statute,
Failure to make objection.

The Commissioner of Insurance properly formulated the standards and
criteria by which the sufficiency of competition among automobile in-
surers was to be evaluated in determining whether to suspend the com-
petitive rate filing provisions of G. L. c. 175E, and properly interpret-
ed c. 175E, § 5, as permitting a determination of insufficiency of com-
petition in the absence of a current competitive rating system and com-
petitive rate filings.  [522-524]
An insurance company could not challenge on appeal the admission of, or
reliance on, unsworn testimony at a hearing to determine whether to
suspend the competitive rate filing provisions of G. L. c. 175E where
it raised no objection to the testimony at the hearing.  [524-525]
There was no merit to an insurance company's contention that a decision
of the Commissioner of Insurance to suspend the competitive rate fil-
ing provisions of G. L. c. 175E was invalid because it was not filed
within thirty days after the close of the hearing.  [525]
A rate filing made by an insurance company on June 30, 1980, pursuant
to G. L. c. 175E, § 7, had no force or effect where, at the time of the
filing, the competitive ratemaking procedure of c. 175E had been
superseded by the rate setting provisions of c. 175, § 113B, for calen-
dar year 1980 and where, subsequent to the filing, the Commissioner
of Insurance determined to renew the § 113B procedure for calendar
year 1981.  [525]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on August 7, 1980.

The case was reported by *Kaplan, J.*

*John G. Ryan (James A. Doogan* with him) for the plain-
tiff.

*Paul W. Johnson,* Assistant Attorney General (*Carolyn V. Wood* with him) for the defendant.

QUIRICO, J.  We review here the decision of the Commissioner of Insurance (Commissioner) to fix industry-wide private passenger automobile insurance rates for the calendar year 1981 pursuant to his traditional authority under G. L. c. 175, § 113B, rather than allow those rates to be established and regulated in accordance with the provisions of G. L. c. 175E, as appearing in St. 1976, c. 266, § 19.  We affirm the Commissioner's decision.

A. *The Present Proceeding and Background.*

1. *The present proceeding.*  On June 2, 1980, the Commissioner held a hearing pursuant to G. L. c. 175E, § 5, to determine whether he should fix and establish motor vehicle insurance rates under G. L. c. 175, § 113B,[1] for the calendar year 1981.  The petitioner Metropolitan Property and Liability Insurance Company (Metropolitan) participated in that hearing by presenting a witness and filing a memorandum.  The hearing was closed on June 9, 1980.  On June 30, 1980, Metropolitan made a filing of private passenger automobile rates with the Commissioner pursuant to G. L. c. 175E, § 7.  The competitive rate filing was to take effect on September 1, 1980, for new business and on November 1, 1980, for renewal business.  The proposed rate change filed by Metropolitan was to result in an over-all increase of 19.6 per cent.

On July 28, 1980, the Commissioner filed his decision, entitled "Report of the Determination of the Commissioner of Insurance Relative to the Operation of Competition Among Motor Vehicle Insurers Pursuant to M.G.L. Chapter 175E, Section 5" (the 1980 decision), with the office of the Commissioner and the Secretary of State.[2]  The 1980 decision renewed the Commissioner-fixed rate-setting procedure under

---

[1] Insurance rates for both private passenger and commercial vehicles were established by the Commissioner pursuant to G. L. c. 175, § 113B, in the three previous calendar years, 1978-1980.

[2] General Laws c. 175E, § 5, requires that the report be made public.

G. L. c. 175, § 113B, for private passenger vehicles but allowed the system of competitively fixed rates under G. L. c. 175E, to go into effect beginning July 1, 1981, for the commercial class of vehicles. On August 4, 1980, the Commissioner issued a notice of hearing to begin September 22, 1980, to fix and establish motor vehicle insurance rates for 1981.[3]

Metropolitan sought review of the 1980 decision in the Supreme Judicial Court for Suffolk County pursuant to G. L. c. 175E, § 13, and G. L. c. 231A. Metropolitan claimed that the 1980 decision was unlawful because it: (1) lacked the appropriate findings of fact and conclusions required under G. L. c. 175E, § 5; (2) was unsupported by the record; (3) was in excess of the Commissioner's authority since it purported to suspend the operation of G. L. c. 175E for the calendar year 1981; and (4) was not issued within thirty days[4] after the close of the hearing.[5] Metropolitan also requested declaratory and injunctive relief[6] that would have allowed its June 30, 1980, competitive rate filing to take effect unless or until the filing was disapproved or suspended by the Commissioner in accordance with G. L. c. 175E, § 7.[7] The Commissioner's amended answer con-

---

[3] Rates for the commercial class were to be established for that portion of calendar year 1981 ending June 30, 1981.

[4] G. L. c. 175E, § 5.

[5] Metropolitan also claimed the 1980 decision was unlawful because it purported to extend the Commissioner's rate fixing authority for a period in excess of the one-year duration specified under G. L. c. 175E, § 5. Metropolitan has neither briefed nor argued this point and we deem it waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

[6] Metropolitan amended its original complaint for declaratory relief to include the request for injunctive relief.

[7] In support of the request for declaratory and injunctive relief, Metropolitan claimed that its June 30, 1980, filing was proper since it was made after the expiration date of the Commissioner's 1979 decision to suspend the competitive rate setting procedure. The prior decision was filed on June 22, 1979. Metropolitan contended that the Commissioner's rate setting authority under that decision extended one year from the filing date thereof. It was the Commissioner's position that the 1979 decision, by its very terms, did not take effect until January 1, 1980, and was effec-

tained an affirmative defense requesting that the G. L. c. 231A claim be dismissed for failure to join all other motor vehicle insurers.

Metropolitan's request for a preliminary injunction restraining the Commissioner from preventing its June 30 filing from taking effect was heard by a single justice of this court on August 20, 1980, and was denied on September 2, 1980.[8] Thereafter, the single justice reserved and reported the case to the full court for determination of all issues, excluding the application for preliminary relief.[9]

Metropolitan asks us to reverse the Commissioner's 1980 decision and, in the event we do, that we then declare that its June 30, 1980, rate filing may take effect and be used by Metropolitan unless or until it is disapproved by the Commissioner.

2. *Background.* In two of our recent decisions we reviewed the history of motor vehicle insurance rate regulation in Massachusetts. *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 381 Mass. 592 (1980). *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181 (1978). That history will not be reviewed here, except to note that the Commissioner has traditionally been vested with broad discretion and authority by the Legislature in the area of motor vehicle insurance rate regulation.

In 1976, the Legislature instituted a system of competitive ratemaking for all motor vehicle insurance coverages in place of the system of Commissioner-fixed rates. G. L.

---

tive through calendar year 1980. Metropolitan has not pressed this argument before us and we therefore find it unnecessary to address the issue. It is important to note, however, that the Commissioner's 1980 decision was filed prior to the effective dates of the June 30 rate filing.

[8] In its complaint, Metropolitan had also requested that the Commissioner be enjoined from establishing rates for 1981. Apparently, this request was not pressed at the hearing. In any event, the issue was not briefed or raised at oral argument and we will not consider it here.

[9] Metropolitan has not taken an appeal from the denial of its application for preliminary relief. Nor was the issue briefed or argued.

c. 175E, §§ 1-13. Under this system, the insurance companies may establish their own rates by making filings with the Commissioner. As we recognized in *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., supra* at 184, "[t]he statute did not, however, eliminate the Commissioner's role in the ratemaking process." Proposed rates must be filed at least forty-five days before their effective date for review by the Commissioner. G. L. c. 175E, § 7. The Commissioner, pursuant to the legislative mandate that the rates "shall not be excessive or inadequate" or "unfairly discriminatory," G. L. c. 175E, § 4 (*a*), is empowered to disapprove any filing if he determines that it does not comply with G. L. c. 175E. In addition, and at any time during the rate period, the Commissioner may determine after a hearing that a rate violates competitive standards or public policy, disapprove the rate and order a premium adjustment. G. L. c. 175E, § 8. Finally, the Commissioner may, at any time, suspend the competitive ratemaking procedure for any territory or for any class of insurance if, after a hearing, he determines that "competition is either (i) insufficient to assure that rates will not be excessive, or (ii) so conducted as to be destructive of competition or detrimental to the solvency of insurers . . . ." G. L. c. 175E, § 5. If the Commissioner makes such a determination, he may, in lieu of competitive ratemaking, resort to his traditional rate-setting authority under G. L. c. 175, § 113B, for a period of not more than one year. That rate-setting procedure may, however, be renewed by the Commissioner "upon appropriate findings of fact, conclusions and order." G. L. c. 175E, § 5. This latter provision is the center of the present controversy.

The competitive rate filing system implemented pursuant to G. L. c. 175E produced "unexpectedly and unprecedentedly high" rates in 1977. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., supra* at 186. After a hearing conducted pursuant to G. L. c. 175E, § 5, the Commissioner determined in a decision dated June 16, 1977 (the 1977 decision), that competition was insufficient to assure that rates

would not be excessive and he ordered that 1978 rates be fixed and established pursuant to G. L. c. 175, § 113B.

After a similar hearing in 1978, the Commissioner determined that competition was still insufficient to assure that rates would not be excessive in 1979. Accordingly, he renewed the Commissioner-fixed rate setting procedure for 1979. In 1979, after still another hearing, the Commissioner again found that competition was insufficient and renewed the rate setting procedure for calendar year 1980. The decisions of the Commissioner relative to competition for the years 1977, 1978 and 1979 were made a part of the record in the present case. Each decision is a public record filed with both the office of the Commissioner and the Secretary of State.

The essence of Metropolitan's claim is that the Commissioner cannot make the kind of determination required under G. L. c. 175E, § 5, in the absence of a competitive market and a finding that the rates resulting therefrom were excessive or, at the very least, without the benefit of competitive rate filings.[10] Since Commissioner-fixed rates have been in effect since 1978, Metropolitan argues that the Commissioner did not, nor could he, make the appropriate findings of fact and conclusions required for a lawful determination under G. L. c. 175E, § 5. For the reasons discussed below, we find this reasoning unpersuasive.

B. *Discussion of Legal Issues.*

1. *The general basis of the 1980 decision.* Every year since 1977 the insurance commissioner in office has held a public hearing pursuant to his statutory authority under G. L. c. 175E, § 5, to determine "whether the motor vehicle insurance environment in this state had progressed sufficiently [since the initial and ill-fated attempt during 1977] to assure rate competition among insurers." Up until the 1980 decision, no Commissioner was able to find enough

---

[10] Metropolitan's June 30, 1980, rate filing appears to be the first such filing made by any motor vehicle insurer since the Commissioner's 1977 decision. The record contains no reference to any other such filings made after that decision.

evidence to conclude that, for any class of motor vehicle insurance, the competitive environment was sufficient to assure that rates would not be excessive. Consequently, except for a brief period in 1977, the competitive rate filing provisions of G. L. c. 175E have been suspended.

In his 1980 decision, the Commissioner found that the evidence, including supporting memoranda and documents introduced in evidence at the hearing, came from persons or companies falling into three groups.[11] Group 1, which included Metropolitan, favored a complete competitive rating procedure for both the commercial and private passenger classes of motor vehicles. This group argued that: (1) the Commissioner could not assess the sufficiency of competition in the absence of competition;[12] and (2) that §§ 4, 7 and 8 of c. 175E provide the Commissioner with sufficient authority to prevent rates from becoming excessive.

Group 2, which included some of the leading domestic and foreign insurance companies and the two insurance agents' associations which participated in the hearing, recommended a "phased-in" approach whereby the commercial class of the market would be subject to the competitive ratemaking provisions effective sometime during calendar year 1981. Group 2 agreed with Group 1 that a competitive price structure would in the long run result in lower premiums for the vast majority of motorists, but Group 2 believed that significant statutory changes in related motor vehicle insurance laws[13] would be necessary to create the appropri-

---

[11] Metropolitan does not argue that the Commissioner's findings of fact and conclusions were not warranted by the evidence. Rather, the challenge made here goes to the nature of the determination required by G. L. c. 175, § 5. In the alternative, Metropolitan argues that its sworn testimony was the only "competent, legal evidence" introduced at the hearing. Therefore, we find it unnecessary at this point to review the evidence presented at the hearing.

[12] This is the gravamen of Metropolitan's claim here.

[13] G. L. c. 175, § 113C (the so-called "Mandatory Offer" law). G. L. c. 175, § 113P (the "Merit Rating System" law). G. L. c. 175, § 113H (the "Reinsurance Facility" law).

ate environment for competition in underwriting the private passenger class.

Group 3, which included two members of the General Court,[14] the Attorney General and Massachusetts Fair Share, was opposed to any competitive pricing structure for any class of motor vehicle insurance. In their opinion the 1977 experiment was proof that competitive rating may never be feasible in Massachusetts. Group 3 felt that a necessary part of any workable competitive scheme must include the availability of price information to allow consumers to compare prices and make intelligent choices and that the insurance industry had thus far failed to disclose to the Commissioner or the public any program or plan designed to effectuate a viable competitive pricing system.

All three groups recognized, in varying degrees, that the above mentioned provisions of G. L. c. 175 must be reevaluated and amended in order to provide an environment more conducive to competition. The Commissioner found little in the record to discourage allowing competition for the commercial class. With respect to the position of Group 1, the Commissioner concluded that the group had "focused all of their interest and emphasis on the workability of the provisions of Chapter 175E [rather than on] the entire auto insurance regulatory picture." He was also convinced, "in retrospect, that the basic reason for the 1977 fiasco was failure on everyone's part to lay the necessary foundation for introducing, educating, and informing motorists of the details of a competitive pricing system." With respect to the noncommercial class of motor vehicle insurance, the Commissioner was "not satisfied that conditions of the market place have changed sufficiently at this time to assure [him] that . . . [those] rates will not be excessive for 1981." His decision adopted the recommendation of Group 2, whereby rates for the commercial class would be established on a

---

[14] Senator McKinnon, the Senate Chairman of the Joint Legislative Committee on Insurance; and Senator Alan Sisitsky.

competitive basis while rates for the private passenger class would be fixed pursuant to G. L. c. 175, § 113B.

2. *Statutory basis of decision.* General Laws, c. 175E, § 5, provides: "If the commissioner determines, after a hearing, at which representatives of consumers and other interested parties may participate, and on the basis of findings of fact and conclusions, that, with respect to any territory or to any kind, subdivision or class of insurance, competition is either (i) insufficient to assure that rates will not be excessive, or (ii) so conducted as to be destructive of competition or detrimental to the solvency of insurers, he shall, within ninety days or as soon thereafter as possible and without regard to calendar dates specified in [G. L. c. 175, § 113B], fix and establish the rates for such insurance or territory pursuant to the provisions of [G. L. c. 175, § 113B]. Such procedure shall have a specified duration of not more than one year *but may be renewed by the commissioner* upon appropriate findings of fact, conclusions and order. Within thirty days after the close of the hearing the commissioner shall make this determination in a report which shall be made public." (Emphasis added.)

In prior decisions, the Commissioners of this Commonwealth have extensively interpreted both the legislative purpose of G. L. c. 175E, and the nature of remedial powers given to the Commissioner under the statute. The Commissioner has emphasized that the "arsenal" of regulatory powers given the Commissioner under the statute is strong evidence that the Legislature did not express an overriding preference for competitive rating. Rather, the Legislature saw the statute as a means of lowering insurance rates: "[P]ricing freedom was intended to be granted only so long as reasonable rates were guaranteed to the public. The plethora of safeguards the statute contains are ample evidence of the Legislature's unwillingness to leave the outcome to a laissez-faire marketplace."[15]

---

[15] Opinion, Findings and Decision on the Operation of Competition Among Motor Vehicle Insurers 19 (June 28, 1978).

In accordance with his view that G. L. c. 175E vested broad oversight authority in him, the Commissioner has concluded that: "Only through the dynamics of consumer choice can competition provide the requisite assurance of the statute. The ability of the market to operate accordingly is the principal test we must apply in reaching a decision under [G. L. c. 175E, § 5]."[16] In applying this test of "competition" the Commissioner developed three evidentiary criteria: (1) the availability of consumer information; (2) the insurers' willingness to seek new business; and (3) the insurers' willingness to accept applicants at posted prices. He has also consistently interpreted § 5 of c. 175E to encompass other problems in the regulatory framework, such as the need for statutory reform of related insurance laws.

In his 1977 decision, the Commissioner explicitly rejected the argument (advanced here by Metropolitan) that no finding of competitive insufficiency can be made in the absence of a determination that rates filed by insurers are correctly excessive.

We conclude that the Commissioner was correct in his formulation of the standards and criteria by which the sufficiency of competition is to be evaluated under § 5. The interpretation of the Commissioner is not binding on us, but it is entitled to some weight, see, e.g., *Maryland Cas. Co.* v. *Commissioner of Ins.,* 372 Mass. 554, 563 (1977), and the consistent administrative construction of a statute permitting more than one possible interpretation is of added significance. *Ace Heating Serv., Inc.* v. *State Tax Comm'n,* 371 Mass. 254 (1976). We recognize that the Commissioner's interpretation has not been shared by many of the insurers from the beginning and, thus, is not a settled view belatedly challenged. However, the Commissioner's interpretation was adopted close in time to the adoption of the statute, has been consistently applied, and, therefore, while it is not binding on us, we have given it due consideration. See *First*

---

[16] Opinion and Findings on the Operation of Competition Among Motor Vehicle Insurers 15 (June 16, 1977).

*Fed. Savs. & Loan Ass'n* v. *State Tax Comm'n,* 372 Mass. 478, 485 (1977) aff'd 437 U.S. 255 (1978).

We conclude further that the standards adopted by the Commissioner are consistent with the statutory language that allows the rate setting procedure to be renewed "upon appropriate findings of fact, conclusions and order." We think that this language necessarily presupposes that a determination whether competition is insufficient may be made in the absence of a current competitive rating system. Therefore, in light of the statutory language chosen by the Legislature and the legislative purpose, the interpretation of the Commissioner was correct.

3. *Other issues.* Metropolitan attacks the 1980 decision of the Commissioner on two additional grounds: (1) that the Commissioner's determination under G. L. c. 175E, § 5, cannot be based on unsworn testimony; and (2) that the Commissioner's decision was not filed within "thirty days after the close of the hearing." G. L. c. 175E, § 5. We find no merit in either of these arguments.

At the hearing before the Commissioner, Metropolitan made no objection to the introduction of the unsworn testimony. Instead, it chose to have its own witness sworn. Now Metropolitan claims that the unsworn testimony did not constitute "competent, legal" evidence. In support of this argument, Metropolitan contends that the hearing under G. L. c. 175E, § 5, is adjudicatory in nature. The hearing in question had many attributes of a regulatory rather than an adjudicatory one, but since Metropolitan did not raise this question before the Commissioner, we feel that it is unnecessary for the purposes of this case to decide whether the hearing was adjudicatory or regulatory. A procedural claim such as this should have been presented in the first instance to the Commissioner in the course of the proceedings. Cf. *American Hoechest Corp.* v. *Department of Pub. Utils.,* 379 Mass. 408, 414 (1980). A party cannot remain silent while an administrative agency appears to be proceeding in error and later complain of the error on judicial review. Metropolitan's other contention is not support-

ed by our decisions. See, e.g., *Amherst-Pelham Regional
School Comm.* v. *Department of Educ.*, 376 Mass. 480, 496
(1978); *Doherty* v. *Commissioner of Ins.*, 328 Mass. 161
(1951). Metropolitan has not demonstrated that this is a
case where the Commissioner's failure to file his decision
within thirty days after the close of the hearing defeats the
purpose of the statute, or that any prejudice has resulted
from the delay.

The principal question as to the evidentiary basis for the
Commissioner's findings relates to the claim of error in ad-
mitting unsworn testimony. We have answered that ques-
tion above. To the extent, if any, that decision of the Com-
missioner is required to be based on "substantial evidence,"
we believe the record of the hearing meets that require-
ment.

4. *Rate filing by Metropolitan on June 30, 1980.* At the
time Metropolitan made its filing the competitive rate-
making procedure had been superseded by the rate setting
provisions of G. L. c. 175, § 113B, for calendar year 1980
and the Commissioner was in the process of rendering his
decision on whether to renew such procedure for calendar
year 1981. In the circumstances of this case, the June 30,
1980, filing was a nullity.

Metropolitan's claimed "right" to make such a filing is in-
consistent with the authority granted to the Commissioner
by the Legislature under G. L. c. 175E, § 5, and G. L.
c. 175, § 113B. The Commissioner's 1979 decision to set
rates pursuant to G. L. c. 175, § 113B, rendered the
June 30, 1980, rate filing ineffective for the remainder of
calendar year 1980. His 1980 decision to renew that proce-
dure for the private passenger motor vehicle class renders
Metropolitan's filing ineffective for calendar year 1981. The
Commissioner's decision to exercise his rate setting authority
leaves no room for individual insurer proposed rates.
Therefore, the June 30, 1980, private passenger motor vehicle
rate filing made by Metropolitan can have no force or effect.

5. *Disposition.* The case is remanded to the county court
where judgment is to be entered on count 1 affirming the

decision of the Commissioner and, on count 2, declaring that the June 30, 1980, rate filing is a nullity.

*So ordered.*