New England Medical Center, Inc. & others[1]
*vs.* Rate Setting Commission & another.[2]

Suffolk. May 22, 1981. — July 14, 1981.

Present: Hennessey, C.J., Liacos, Abrams, Nolan, & Lynch, JJ.

*Rate Setting Commission. Hospital Service Corporation. Statute*, Construction. *Administrative Law*, Hearing.

The Rate Setting Commission had no authority under G. L. c. 176A, § 5, to withdraw its approval of an existing interim agreement regulating reimbursement rates between Blue Cross of Massachusetts, Inc., and ninety-five Massachusetts hospitals on the ground that negotiations between the parties had not produced a proposed successor contract before the date set by the commission. [50-55]

In an action by certain hospitals seeking review of a decision of the Rate Setting Commission withdrawing its approval of an existing interim agreement between the hospitals and Blue Cross of Massachusetts, Inc., the hospitals could not claim that they were entitled to an adjudicatory hearing prior to the commission's decision where they failed to raise an objection on that ground at the time of a public hearing on the actions of the commission in withdrawing its approval. [55]

Civil actions commenced in the Supreme Judicial Court for the county of Suffolk, one on May 5, 1981, and five on May 6, 1981.

The cases were consolidated for hearing and were reported by *Liacos*, J.

The case was submitted on briefs.

*Richard P. Ward & George A. Cooke, Jr.*, for New England Medical Center, Inc.

---

[1] This consolidated action includes twenty-one other Massachusetts hospitals as plaintiffs. The Massachusetts Hospital Association, Inc., filed a brief as amicus curiae.

[2] Blue Cross of Massachusetts, Inc.

*John E. Rogerson, John H. Clymer & Paul J. Hartnett, Jr.,* for Leonard Morse Hospital & another.

*David S. Szabo & John A. Norris* for New England Memorial Hospital.

*Kenneth Laurence, Carolyn P. Jacoby, Lee T. Gesmer & Michael K. Loucks* for Addison Gilbert Hospital & others.

*Francis X. Bellotti,* Attorney General, *Carl Valvo, Donald K. Stern, William L. Pardee,* Assistant Attorneys General, *& Pamela S. Horst* for Rate Setting Commission.

*Edward J. Dailey & Dennis J. LaCroix* for Blue Cross of Massachusetts, Inc.

*Michael C. Donahue & Andrew M. Levenson* for Framingham Union Hospital, Inc.

*Kenneth A. Behar, Edward D. Kalman, John F. O'Leary & Patrick R. Carroll* for Massachusetts Hospital Association, Inc., amicus curiae.

ABRAMS, J. The main issue presented by this action is whether the Rate Setting Commission (commission) is authorized by G. L. c. 176A, § 5, to withdraw its approval of an existing interim agreement regulating reimbursement rates between Blue Cross of Massachusetts, Inc. (Blue Cross), and ninety-five Massachusetts hospitals on the ground that negotiations between the parties had not produced a proposed final contract by the commission's deadline. The plaintiff hospitals challenge the commission's decision on the ground that it exceeded the scope of the commission's powers. We agree. We hold that the commission cannot disapprove an existing contract on the ground that the parties have failed to agree on a proposed contract within the time allotted the parties by the commission.[3]

---

[3] As a consequence of our conclusion, we entered the following order on June 9, 1981: "It is ordered that the withdrawal of approval of HA-28i, the interim participating hospital reimbursement agreement between the plaintiffs and Blue Cross, by the Rate Setting Commission be, and hereby is, reversed; and that HA-28i remain in effect through September 30, 1981.
"Opinion or opinions to follow."

The plaintiff hospitals filed complaints under G. L. c. 176A, § 5, thirteenth par., in the Supreme Judicial Court for the county of Suffolk, seeking review of the commission's decision withdrawing approval from a reimbursement agreement known as HA-28-i. The hospitals requested that the single justice stay the commission's challenged decision, which was to become effective May 13, 1981. A single justice of this court reserved and reported the cases without decision, and entered an order staying the commission's withdrawal of approval of the contract pending the determination of the action by judgment of the full court, or until June 16, 1981, whichever first occurred. The single justice also allowed a stipulation consolidating all the actions, and granted the request of Blue Cross that it be made a defendant for purposes of the consolidated action. On June 9, 1981, we entered an order reversing the commission's disapproval of HA-28-i. See note 3, *supra*.

The facts are as follows. On November 10, 1977, the commission approved HA-27, a hospital reimbursement agreement between a number of Massachusetts hospitals and Blue Cross, the only nonprofit hospital service corporation in the Commonwealth. G. L. c. 176A, § 5. The agreement, which governed rates of reimbursement to the hospitals by Blue Cross, had a termination date of September 30, 1980. On March 12, 1980, anticipating that Blue Cross and the hospitals would soon begin negotiating a successor agreement to HA-27, the chairman of the commission wrote to Blue Cross, detailing several of the commission's concerns about the upcoming negotiations, and identifying several issues which it expected would be addressed in the successor contract.

Contracts between Blue Cross and participating hospitals are negotiated on an industry-wide basis by Blue Cross and the Massachusetts Hospital Association, Inc. (MHA), the bargaining agent for the hospitals. After a general contract is approved by Blue Cross and MHA, it is submitted to the commission for its approval or disapproval. See G. L. c. 176A, § 5, sixth & ninth pars. If the general contract is approved by the commission, Blue Cross then contracts

with each hospital individually using the industry-wide contract as a guide.

Blue Cross and MHA began to negotiate a successor contract to HA-27 in the spring of 1980, but the negotiations broke down in early June. Blue Cross then requested that HA-27 be extended from its scheduled expiration date of September 30, 1980, until December 31, 1980. On August 14, the commission approved that extension.

On November 3, 1980, a successor agreement, HA-28, was submitted to the commission for approval under c. 176A, § 5. Following a public hearing on December 1, 1980, the commission voted to disapprove HA-28. No party appealed that decision. Following the disapproval, Blue Cross asked the commission to approve an interim contract that would carry HA-27 forward for a limited period during which a new successor agreement, to be known as HA-29, could be negotiated. The commission responded that it was "favorably disposed" to approving an interim contract, but suggested that the interim contract contain a preamble that would set out a timetable for the negotiation and submission of HA-29. The commission said that it found a period of two months, from January 1, 1981, through February 28, 1981, acceptable, and that the commission "would expect to receive a copy of the new . . . contract by [March 1, 1981]." The commission stated that "[o]ur willingness to accept a new interim contract, and to approve it for the entire [October 1, 1980, to September 30, 1981] period, is predicated on your expressed sensitivity to our concerns and your expectation that you can make good progress on them. The Commission would be prepared to revoke the interim contract approval if HA-29 does not show adequate progress on these concerns."

The commission approved the interim agreement between Blue Cross and ninety-five Massachusetts hospitals on December 31, 1980. Known as HA-28-i, the contract was to take effect on January 1, 1981, and was to remain in effect until September 30, 1981. Payments made under HA-28-i, as well as administration of the interim agreement,

were to be governed by HA-27. A preamble to the contract stated that within sixty days of its approval, Blue Cross and the hospitals would enter into renegotiations toward a successor agreement to take effect October 1, 1981, and that "[i]t is the intention of the parties to submit a revised agreement to the Commission on March 1, 1981."

However, March 1 passed without the submission of HA-29. The following day, Blue Cross and MHA jointly requested an extension of fourteen days to conclude their negotiations and to draft the new contract. The commission agreed to that extension, but reminded the parties that it expected to receive a signed copy of HA-29 by March 16. The negotiations again broke down, and, after being informed that the parties had reached an impasse, the commission voted on March 12, 1981, to withdraw its approval of HA-28-i, effective May 13, 1981. G. L. c. 176A, § 5, sixth & twelfth pars.

In a statement setting forth its reasons for disapproving the interim contract, the commission quoted its earlier communications with the parties stating that its approval of HA-28-i had been based upon the parties' understanding that a successor agreement would be ready by March 1. The commission stated, "The interim contract was permitted upon specific assurances by the parties that this mechanism would result in a satisfactory new proposal and would avoid administrative inconvenience to Blue Cross, its subscribers and participating hospitals."

Following the commission's withdrawal of its approval of the interim agreement, a number of hospitals filed requests for a public hearing on the commission's actions. G. L. c. 176A, § 5, twelfth par. After a public hearing was held on April 2, 1981, the commission voted, on April 9, to affirm its decision withdrawing approval from HA-28-i. It is the commission's withdrawal of approval from the interim contract which the hospitals appeal, pursuant to G. L. c. 176A, § 5, thirteenth & fourteenth pars.

*The commission's authority to disapprove hospital reimbursement contracts.* General Laws c. 176A, § 5, requires

that reimbursement contracts between Blue Cross and hospitals that provide services to Blue Cross subscribers be approved in advance by the commission. The statute provides that no rates of payment to the hospitals by Blue Cross may be approved "unless such rates reflect reasonable costs or are based on charges made to the general public, whichever is lower."[4] Such approval may be withdrawn by the commission at any time. G. L. c. 176A, § 5, sixth par.

In determining the scope of a statute we look to the statutory language. General Laws c. 176A, § 5, explicitly permits the commission to determine whether the rates of payment contained in a proposed contract reflect reasonable costs. In making its determination, the commission must consider the services provided by the hospital and the costs of comparable hospitals; it also may consider depreciation, amortization, interest, occupancy, individual services which are rendered for partial or no payment, and "principles of reimbursement[5] for provider costs in effect from time to time under Titles XVIII and XIX of the Social Security Act," (the Medicare and Medicaid Acts, respectively). G. L. c. 176A, § 5, sixth par., as amended through St. 1974, c. 812, § 3. The statute further provides that

---

[4] The hospitals' charges to the general public generally exceed reasonable costs, as those costs are computed by the commission. See *Baystate Medical Center* v. *Blue Cross of Mass., Inc.*, 382 Mass. 485, 486 n.5 (1981); *Commonwealth* v. *Mercy Hosp.*, 364 Mass. 515, 519 & n.2 (1974).

[5] For example, the Federal Medicare statute authorizes experiments with prospective reimbursement, and other forms of reimbursement, as an incentive for economy, 42 U.S.C. § 1395b-1 (Supp. III 1979), and the Medicaid statute gives the States authority to implement their own methods of determining reasonable cost reimbursement rates for purposes of Medicaid programs, subject to the approval of the Secretary of Health and Human Services, 42 U.S.C. § 1396a (a)(13)(D)(1976). See *Massachusetts Hosp. Ass'n* v. *Harris*, 500 F. Supp. 1270, 1274-1275 (D. Mass. 1980). Federal law also establishes a program of systematic review by designated planning agencies of proposed hospital capital expenditures in order to prevent unnecessary expenditures, 42 U.S.C. § 1320a-1 (Supp. III 1979). See generally Weiner, "Reasonable Cost" Reimbursement for Inpatient Hospital Services Under Medicare and Medicaid: The Emergence of Public Control, 3 Am. J.L. & Med. 1 (1977).

other requirements of § 5 notwithstanding, "the commission may approve any rate of payment to any provider . . . if such rate, in the opinion of the commission, contains an incentive to achieve greater efficiency and economy in the manner of providing health care services without adversely affecting the quality of such services." G. L. c. 176A, § 5, seventh par., as appearing in St. 1969, c. 874, § 1.

In order to enable the commission to determine accurately whether hospital rates reflect reasonable costs, the Legislature granted it the authority to require hospitals to make available to it data, including statistics and other information. G. L. c. 176A, § 5, eighth par. The Legislature also granted the commission the authority to examine the books of account and statistical records of each hospital and of Blue Cross for the purpose of approving or disapproving the contracts between those parties. *Id.*

The statute delegates to the commission broad authority to examine and consider factors included in the rates of payment in hospital reimbursement agreements. It also grants the commission the authority to require that the parties in their contract include methods of reimbursement designed to promote efficiency and economy in the furnishing of quality health care services. G. L. c. 176A, § 5, seventh par. Additionally, the commission has discretion under G. L. c. 176A, § 5, sixth par., to disapprove health provider contracts which do not incorporate principles of reimbursement in use under Titles XVIII and XIX of the Social Security Act, which are, in the commission's view, the appropriate principles to be employed in establishing reasonable costs.[6] "An express grant carries with it by implication

---

[6] The commission's authority under G. L. c. 176A, § 5, sixth & seventh pars., enables it to ensure that the principles of reimbursement in Blue Cross contracts are not inconsistent with, and are complementary to, reimbursement principles employed by the commission in establishing hospital charges pursuant to its rate setting function. See G. L. c. 6A, § 32. That statute also refers to principles of reimbursement under Federal law: "Every rate, classification and other regulation established by the commission shall be consistent where applicable with the principles of reimbursement for provider costs in effect from time to time under

all incidental authority required for the full and efficient exercise of the power conferred. The Legislature need not enumerate nor specify, definitely and precisely, each and every ancillary act that may be involved in the discharge of an official duty." *Scannell* v. *State Ballot Law Comm'n,* 324 Mass. 494, 501 (1949). See *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health,* 379 Mass. 70, 75 (1979); *Town Taxi Inc.* v. *Police Comm'r of Boston,* 377 Mass. 576, 586 (1979); *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare,* 326 Mass. 121, 124 (1950).

We "reject [the hospitals'] cramped reading of [G. L. c. 176A, § 5, sixth & seventh pars.] and rather consider [them] to extend to the interpretation and elaboration of the panoply of powers and duties confided" to the commission by that statute. *Cambridge Elec. Light Co.* v. *Department of Pub. Utils.,* 363 Mass. 474, 494 (1973). See *Levy* v. *Board of Registration & Discipline in Medicine,* 378 Mass. 519, 523-524 (1979) (an agency should construe a reform in its statute broadly so as to further the legislative purpose). Therefore, "[t]he Commission is not required, as the hospitals contend, to defer to the hospitals' point of reasonableness in cases of conflict. If, in the Commission's opinion, a proposed rate structure is designed to further the purposes of the statute less effectively than another rate structure would, then it would be proper for the Commission to reject the proposed rates." *Blue Cross of Maryland, Inc.* v. *Franklin Square Hosp.,* 277 Md. 93, 110 (1976). See *Hartford Memorial Hosp.* v. *Health Servs. Cost Review Comm'n,* 44 Md. App. 489 (1980).

---

Titles XVIII and XIX of the Social Security Act governing reimbursements or grants available to the commonwealth . . . ." G. L. c. 6A, § 32, tenth par., inserted by St. 1973, c. 1229, § 2. "Where the Legislature uses the same words in several sections which concern the same subject matter [principles of reimbursement for health care providers], the words 'must be presumed to have been used with the same meaning in each section.'" *Insurance Rating Bd.* v. *Commissioner of Ins.,* 356 Mass. 184, 188-189 (1969), quoting from *Liddell* v. *Standard Accident Ins. Co.,* 283 Mass. 340, 346 (1933).

However, the issue raised is whether the commission's disapproval of HA-28-i, based on a breakdown in negotiations between the hospitals and Blue Cross, is within its statutory authority. The commission has maintained throughout these proceedings that it disapproved the interim contract because the parties failed to submit the successor contract by the deadline it established. The fact that the parties have continually failed to reach a timely agreement on a successor contract[7] is undoubtedly frustrating to the commission, but that fact does not permit the commission to respond to stalled negotiations by withdrawing its approval of an existing contract. Indeed, the opposite conclusion could be drawn from the fact that the Legislature provided for a "no-contract" situation where the parties are unable to submit to the commission an acceptable successor contract. G. L. c. 176A, § 1.[8] Therefore, the commission's decision to withdraw its approval from HA-28-i,[9] based on the status

---

[7] In 1972, then Governor Francis W. Sargent criticized the delays in the negotiations between Blue Cross and Massachusetts hospitals on a reimbursement contract, stating that the prior contract "was concluded and rushed to the Rate Setting Commission at the eleventh hour," with the result that the commission did not have adequate time to review the contract. Letter from Governor Francis W. Sargent to William T. Robinson, president, Massachusetts Hospital Association (Sept. 12, 1972).

[8] Since we have concluded that the commission's disapproval of the existing contract is invalid, we do not reach or decide any issues concerning the construction of G. L. c. 176A, § 1.

[9] The commission suggested that its disapproval was also based on the fact that the reimbursement rates in HA-28-i "merely [carried] forward from HA-27 a reimbursement method which results in unreasonable costs levels." It also argues that when HA-28-i was approved, it contained "an incentive to achieve greater efficiency and economy in the manner of providing health care services," G. L. c. 176A, § 5, seventh par., but that when it became clear a successor agreement would not be timely submitted, the interim contract no longer provided such an incentive. The latter claim appears to be an after-the-fact rationalization by the commission to provide additional bases for its disapproval of HA-28-i. The record does not support the commission's claims that it based its disapproval on these grounds. The rates disapproved had been in effect for more than three and one-half years, and the disapproval immediately followed the commission's learning of the stalled negotiations. Further, the commission stated in its statement of reasons for disapproving HA-28-i that the in-

of the negotiations on a successor contract, exceeded its statutory authority. See G. L. c. 176A, § 5, fourteenth par.; G. L. c. 30A, § 14 (7) (b).

*Other issues.* The parties argue at length whether the hospitals were entitled to an adjudicatory hearing before the commission. "The question is not to be decided by a mechanical process of categorization; rather we rely on the considerations of functional suitability . . . ." *Cambridge Elec. Light Co.* v. *Department of Pub. Utils.,* 363 Mass. 474, 488 (1973). See *Palm Manor Nursing Home, Inc.* v. *Rate Setting Comm'n,* 359 Mass. 652, 654-655 (1971). The hospitals assert that they are entitled to an adjudicatory hearing if the commission decides to withdraw its approval from an existing contract. The hospitals' position appears to be that an adjudicatory proceeding is required before the commission can disapprove an existing contract, although an adjudicatory proceeding might not be required for the disapproval of a proposed, industry-wide contract. We need not decide this issue since the record reveals that the hospitals lodged no objection on this ground at the time of the hearing. "A party cannot remain silent while an administrative agency appears to be proceeding in error and later complain of the error on judicial review." *Metropolitan Property & Liab. Ins. Co.* v. *Commissioner of Ins.,* 382 Mass. 514, 524 (1981).

Further, the hospitals do not suggest what fact, if any, should or could have been resolved by an adjudicatory hearing. The only claim made is that the hospitals should have

terim contract "does not address, nor was it intended to address" the commission's stated concerns with the reimbursement levels of HA-27. Finally, the commission suggested, albeit obliquely, that its original approval of HA-28-i was somehow erroneous, and hence HA-28-i has always been invalid. The record does not support the claim that the commission's approval of HA-28-i was beyond its statutory authority, and the commission may not impeach its earlier approval. In these circumstances, the hospitals may rely on a presumption of regularity in the commission's performance of its functions. See *Fryer* v. *Department of Pub. Utils.,* 374 Mass. 685, 690 n.2 (1978); *Palm Manor Nursing Home, Inc.* v. *Rate Setting Comm'n,* 359 Mass. 652, 655 (1971).

been allowed to call the commissioners as witnesses at the public hearing. The purpose for this demand is unclear. Inquiry into the mental processes of administrative decision makers at an administrative hearing is inappropriate. See *United States* v. *Morgan*, 313 U.S. 409, 422 (1941). See also *American Employers' Ins. Co.* v. *Commissioner of Ins.*, 335 Mass. 748, 753 (1957). In certain cases, a court may allow examination of persons charged with the administration of an agency if the agency has not made findings at the time of its decision. A court may also allow such examination in extraordinary circumstances where there is a strong showing of improper behavior or bad faith on the part of the administrator. See *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U.S. 402, 420 (1971). The record reveals no such circumstances.

In conclusion, the record reflects that the disapproval of HA-28-i was based on the impasse in negotiations, a matter beyond the commission's statutory authority of disapproval of an existing contract. Since the record does not disclose that the commission's decision was based on another ground, there is no reason to remand this matter to the commission for further proceedings.[10]

---

[10] We also note that HA-28-i is due to expire on September 30, 1981, and that any further proceedings most likely would extend beyond the expiration date of the contract.