Volterra, J.
This matter comes before the court in response to the motion of the Boston Globe Newspaper Company to revise the order to release the report and transcription of the inquest of Michelle Walton. On November 13, 1995 the court ordered the parties in the matter, the Boston Globe, the Attorney General of Massachusetts, the Suffolk County District Attorney and the Department of Social Services, to submit memoranda expressing their views regarding the appropriate principles to be considered by the court concerning the request by a member of the news media for access to inquest documents. A hearing was held on November 27, 1995. For the following reasons, the Boston Globe’s Motion to Revise the order releasing the transcript and report to add exhibits to the inquest documents to be released is ALLOWED subject to specified privileges.
BACKGROUND
On October 6, 1994 Michelle Walton was found dead under a pile of sheet rock in the home of her then foster parents, Charles and Anita Johnson. Pursuant to G.L.c. 38, §8, an inquest, closed to both the public and the press, was conducted on June 26, 1995. The court filed its report and a transcript of the proceeding in the Suffolk Superior Court. The inquest documents were impounded by operation of law. On September 28, 1995 a Suffolk County grand jury declined to return any indictments for murder in connection with Michelle Walton’s death and returned a "no bill” to Superior Court. The Commonwealth, pursuant to G.L.c. 38, §10, then certified that it did not contemplate any prosecution in connection with the girl’s death and moved for an order that the report and the transcription from the inquest “be opened for examination.” The Superior Court (Volterra, J.) granted the motion.
DISCUSSION
1. Intent of G.L.c. 38, §10
General Laws chapter 38, §10 states in relevant part:
The court shall file its report and a transcript of the inquest proceedings in the superior court. . . Said transcript shall be impounded until the district attorney files a certificate with the superior court indicating that he will not present the case to a grand jury, or files notice with the superior court that the grand jury has returned a true bill or no bill after presentment by the district attorney.
To determine the intent of the legislature, a reviewing court looks to both the language and the purpose of an act. Beard Motors, Inc. v. Toyota Motor Distributors, Inc., 395 Mass. 428, 431-32 (1985).
The plain language of the statute indicates that the only item to be impounded after the inquest is the transcript. Such a narrow reading would imply that all other items from the inquest could be immediately released. However, this narrow interpretation when taken in conjunction with the second prong of the test would completely frustrate the purpose of the statute. The purpose of impounding materials during an inquest is to avoid the risk of prejudice to a defendant in possible future criminal proceedings from pre-trial publicity relating to the conduct and proceeding of a prior inquest. Commonwealth v. Dabrieo, 370 Mass. 728, 741 (1976).
“A statute should not be read in a manner that defeats its intended utility.” Simon v. Solomon, 385 Mass. 91, 100 (1982). Thus, to read the word “transcript” as excluding such items as the record and the exhibits would nullify the purpose of impoundment by releasing information which would cause prejudice to a future defendant.
The Attorney General argues that the case of Commonwealth v. Dabrieo, 370 Mass. 728 (1976), shows that inquest documents are not public documents even after the purpose of impoundment to avoid prejudice to a criminal defendant has ended. However, the court distinguishes Dabrieo from the case at bar since the defendant in Dabrieo was actually indicted and tried for murder. Here, no charge has been levied against any individual, nor is any charge contemplated.
Furthermore, looking to the facts of this case, the released transcript specifically discussed all but one of the exhibits used during the inquest. Therefore, much of the information contained in the inquest exhibits has effectually been released. If harm to a defendant were contemplated the damage would be irreversible regardless of the release of inquest exhibits.
2. Constitutional Implications
The court now holds its statutory interpretation up to constitutional scrutiny. The Attorney General argues that because inquests and inquest documents are not open to the public they should, therefore, never be released to the public. The Attorney General relies *654 on Kennedy v. Justice of the District Court of Dukes County, 356 Mass. 367 (1969), and G.L.c. 38, §10 to support his proposition that inquest documents are not public documents, and that even after the purpose of impoundment to avoid prejudice to a criminal defendant has ended, only the report and the transcript are to be made accessible to the public. Id. at 378; Commonwealth v. Dabrieo, 370 Mass. 728, 741 (1976)
No case known to the court addresses the constitutional conflict between the First Amendment’s guarantee of freedom of the press versus the avoidance of prejudice to a criminal defendant. Therefore, the court follows the balancing test outlined in Davis v. Alaska, 415 U.S. 308 (1965). Davis compares a witnesses’ right to privacy in juvenile records with the Sixth Amendment right to confrontation through cross-examination. The state argued in Davis that exposure of a juvenile’s record of delinquency would likely cause impairment of the rehabilatory goals of the juvenile correctional procedures and that such prejudice outweighs a defendant’s right to confront a witness through cross-examination. Id. at 319.
Similarly, here the Commonwealth argues that the right of a criminal to receive a fair trial outweighs the First Amendment right of freedom of the press. Unlike Davis, the facts of this case present fairly skewed results. As previously discussed, the grand jury declined to indict on the facts revealed at Michelle Wilson’s inquest. Therefore, the court attaches little concern to the protection of the rights of a hypothetical defendant.
Further, like Davis, whatever temporary embarrassment might result to individuals discussed at the inquest or to their family members by disclosure of the inquest exhibits, is outweighed by petitioners right to probe into the workings of the Department of Social Services and the public’s right to such information. Id. at 319.
The court declines to accept that the State’s policy interest in protecting the confidentiality of inquest exhibits, especially in these circumstances where much, if not all, of the information has been previously released through the transcript and record of the inquest, requires yielding so vital a constitutional right as that of Freedom of the Press. Id. at 320.
In this setting, the court concludes that the right of the press is paramount to the State’s policy of protecting an individual from potential and unlikely prosecution and the embarrassment that may accompany it.
3. Privileged Materials
The Attorney General, the District Attorney for Suffolk County and the Department of Social Services each argue that, regardless of how G.L.c. 38, §§8, 10 are interpreted, inquest materials are imbued with privilege and must be kept confidential.[1]
It is a well-established rule that government officials may not be compelled to reveal their decision-making processes. See United States v. Morgan, 313 U.S. 409, 415-17 (1941); New England Medical Ctr., Inc. v. Rate Setting Comm’n, 384 Mass. 46, 56 (1985). In the area of criminal prosecutions, the decisions regarding whether or not to prosecute a case and the manner of prosecuting cases, including the reasons why particular witnesses are called or are not called, and why particular topics of evidence are presented or are not presented, are inextricably connected with the deliberative processes of the prosecutor and are thus protected from public inquiry. See New England Medical Ctr., Inc., 384 Mass. at 55-56; Attorney General v. Tufts, 239 Mass. 458, 489-91 (1921).
In addition, criminal investigatory materials compiled by law enforcement personnel are privileged. WBZ-TV4 v. District Attorney for the Suffolk Dist., 408 Mass. 595, 603 (1990). The public’s interest in maintaining the confidentiality of information that would tend to reveal law enforcement investigatory techniques or sources is well established because it encourages individual citizens to come forward and speak freely with police concerning matters under investigation. Id.
Further, documents like those introduced at the inquest are not generally contemplated as being in the public realm. Globe Newspaper Co. v. Boston Retirement Board, 388 Mass. 427, 441 n.22 (1983). In particular, all documentation surrounding the autopsy and the resulting report is considered to be privileged material. See Globe Newspaper Corp. v. Chief Medical Examiner, 404 Mass. 132, 134-36(1989) (report of autopsy conducted under G.L.c. 38, §6 are privileged medical information under G.L.c. 4, §7, Twenty-sixth (c)).
The court agrees that privilege should be considered before releasing inquest documents to the press. Therefore, the court requests that the parties asserting privilege submit materials which would indicate how the exhibits should be either redacted or withheld. Once received, the court will view the documents in camera in order to preserve specified privileges.
ORDER
For the foregoing reasons, it is hereby ORDERED that qualified privileges will be reviewed in camera as requested by the parties claiming privilege in the matter. The order is stayed for twenty-one (21) days to permit the parties to notice the providers of these documents to index by document protected materials so that they may be appropriately redacted by the court in order to preserve privilege. All materials found not to be privileged shall be released in a manner in accordance with the transcript and record.

In the instant action, while the Suffolk County District Attorney’s Office does not oppose the Globe’s motion to revise the certification to include the exhibits to the inquest, the office asserts the position that there must be a uniform application of privileges in order for such privileges to offer the protections for which they were designed.