Kaplan, Mitchell H., J.
INTRODUCTION
This case presents itself to the court in an unusual posture. Plaintiff Lighthouse Masonry, Inc. (Lighthouse) was the masonry subcontractor on a public works project at the King Philip High School in Wenham (the Project). On July 12, 2006, defendant Office of the Attorney General, Fair Labor and Business Practices Division (the OAG) issued four citations to Lighthouse for an unintentional failure to pay prevailing wages to certain of its employees working on the Project, as required by G.L.c. 149, §27. Lighthouse timely appealed the citations to the Division of Administrative Law Appeals (DALA). After an evidentiary hearing and various actions internal to DALA, which included the reassignment of the matter to defendant Chief Administrative Magistrate Shelly Taylor (Taylor) from First Administrative Magistrate Kimberly Fletcher (Fletcher) and which will be discussed in greater detail below, Taylor issued a decision in which she held that one of the four citations was properly issued, but the other three must be vacated (the Taylor Decision or, simply, the Decision). In response, Lighthouse filed the complaint and amended complaint (collectively the Complaint) now before this court. The Complaint is pled in four counts. Count I is straightforward enough. It is an appeal pursuant to G.L.c. 30A, §14 and G.L.c. 149, §27C(b)(4) from so much of the Taylor Decision as affirmed the issuance of one of the citations. Counts II through IV are novel. In Count II, Lighthouse requests the court to order DALA to produce any draft decisions prepared by Fletcher and *493 “all records concerning [Lighthouse’s] appeal generated by or at any time in the possession and/or control of Magistrate Fletcher.” It is the court’s understanding that Fletcher’s draft decisions have been produced to Lighthouse, and Count II is, therefore, moot. In Count III, Lighthouse asks this court to declare that Fletcher’s unissued decision “is the decision binding on the parties” not the Taylor Decision. Count IV seems to request the same relief as Count III. In this Count, although the specific relief requested is less than clear, as the court understands it, Lighthouse asks the court to vacate the Taylor Decision and declare a decision of Fletcher the final decision of DALA on Lighthouse’s appeal and that Fletcher’s decision receive such deference as a DALA decision is due and the Taylor Decision receive no such deference.
The case is now before the court on Lighthouse’s motion for partial summaiy judgment on Count III, and the defendants’ cross motion for summaiy judgment on all four counts of the Complaint. For the reasons that follow, Lighthouse’s motion is DENIED, and the defendants’ cross motion is ALLOWED.
FACTS
Lighthouse was the masomy subcontractor on the Project. The Project was classified as a public construction project under the Prevailing Wage Law. The Commissioner of the Massachusetts Department of Labor’s Division of Occupational Safely (the Commissioner) sets the wage rates that contractors engaged in public construction are required to pay their employees on each public construction project by issuing a wage rate sheet that lists the various occupational classifications of the workers on the project and the corresponding minimum hourly wages. See G.L.c. 149, §§26-27. Two of the classifications on the wage rate sheet issued in connection with the Project were “bricklayers/masons” and “laborers.” The OAG is charged with enforcing and ensuring compliance with the Prevailing Wage Law. See G.L.c. 23, §3(b).
At some point during the Project, the OAG was contacted by the Masomy Industry Fair Wage Alliance, which claimed that Lighthouse had classified and was paying certain of its employees working on the Project as laborers when they were performing masomy work. In response, the OAG sent an inspector to the work site on several occasions. On four of his visits, the inspector observed Lighthouse employees performing certain tasks that the inspector believed should be classified as masomy work. These tasks included smoothing masonry walls, cutting and patching wall block, and rubbing cement block with a hand stone. These employees were, however, classified as laborers, not masons, in Lighthouse’s payroll records. With respect to one employee, Antonio Ferreira, the inspector found that he was not being paid at any prevailing wage rate. Lighthouse attributed Ferreira’s pay to a clerical error and corrected it before a citation issued.
On July 12, 2006, as a result of these four putative violations, the OAG issued citations to Lighthouse, assessing fines of $500 for each — $2000 in the aggregate. Lighthouse filed a timely appeal of these citations with DALA, pursuant to G.L.c. 149, §27C(b)(4). The appeal was assigned to Fletcher as hearing officer. An evidentiary hearing on this matter convened before Fletcher on August 3, 2007. Thereafter, at some time prior to March 8, 2008, Fletcher submitted a draft of her decision to Taylor.
DALA then had in place an internal procedure pursuant to which magistrates’ draft decisions were submitted to two other magistrates for review and comment (a so-called “first reader” and “second reader”), and then to Taylor for her review, before they were issued. According to Taylor, this process is generally intended to ensure that conclusions of law are supported by the facts found by the magistrate, the legal analysis is sound and follows applicable law, and that the decision is clearly written and grammatically correct. Taylor’s predecessor as Chief Administrative Magistrate followed a similar procedure.
Taylor disagreed with Fletcher’s legal analysis. In Taylor’s view, Fletcher’s draft did not properly apply the legal principles set out in a Superior Court decision that Judge John Cratsley issued on January 7,2008.[1] After Premier issued, Taylor required that all DALA appeals raising similar Prevailing Wage Law questions receive special attention. She discussed Fletcher’s draft with her and several other magistrates. She asked Fletcher to reconsider her draft in light of Premier and these discussions. On April 3, 2008, Fletcher submitted a second draft of her decision to Taylor. In this draft, Fletcher continued to take a position on the law inconsistent with that set out in Premier. Before Taylor completed her review of these drafts, Fletcher resigned from her position with DALA.
After she had resigned, Fletcher sent a letter to the parties to the Lighthouse appeal that stated:
I resigned my position with [DALA] effective June 4, 2008. Many months ago, I completed my decision in the above-captioned case. The decision has not yet been issued by DALA. I am writing this letter to let you know that I am not the cause of the delay.
In July 2008, Taylor held a status conference on the appeal. She explained that, as a consequence of Fletcher’s resignation, a new presiding officer had to be assigned to the case in accordance with 801 CMR 1.01(1 l)(e) (providing that a successor may be appointed when the presiding officer becomes unavailable prior to a decision being issued), and assigned herself to the appeal. On July 29, 2008, Taylor issüed her Decision. The result was the same as that set out in Fletcher’s drafts: three of the violations were vacated and the fourth, relating to Antonio Ferreira, was affirmed. See note 1, infra. Taylor’s legal analysis was, however, different from Fletcher’s. She vacated the three citations not on the grounds that the Commis *494 sioner erred in classifying these employees as masons, but because Lighthouse could not have known the proper classification at the time it paid its employees and therefore civil penalties for paying the wrong wage must be vacated. After the Decision issued, Lighthouse filed this action.[2]
DISCUSSION
I. THE FLETCHER DRAFTS
Lighthouse contends that Taylor had no authority to withhold a Fletcher draft decision once Fletcher believed that she had completed it. The court disagrees. The Chief Administrative Magistrate is statutorily authorized to establish policies that will reduce the number of actions that are subsequently appealed to the Superior Court. G.L.c. 7, §4H states, in relevant part: “It shall be the responsibility of [the] chief administrative magistrate to organize his division to provide speedy and fair disposition of all appeals and to establish policies that will encourage and aid parties in limiting and consolidating issues and pleadings to the superior court." Id. (emphasis added). The legislature thus clearly intended that the Chief Administrative Magistrate have broad authority in deciding how to structure DALA and how the legislative goals could best be achieved. DALA is an administrative agency not a court. There appears to be no good reason why the Chief Administrative Magistrate should be prohibited from putting in place a mechanism for draft decisions to be reviewed by other magistrates to insure their quality and compliance with existing precedent.
Taylor asked Fletcher to reconsider her legal analysis not any findings of fact. This request was not made on an ad hoc basis, but rather pursuant to a uniformly applied policy for first and second review, and then review by the Chief Administrative Magistrate. It was prompted by her concern that Fletcher’s position on the scope of DALA review in these prevailing wage cases was inconsistent with that of Judge' Cratsley in his recently issued decision in Premier. As noted above, DALA’s enabling legislation specifically tasks the Chief Administrative Magistrate with establishing policies that will limit appeals to the Superior Court. This policy of reviewing a magistrate’s legal analysis is consistent with that statutory direction.
Lighthouse argues that, notwithstanding the authority granted Taylor under G.L.c. 7, §4H, G.L.c. 149, §27C(b)(4) limits the actions that a Chief Administrative Magistrate may take in connection with the appeal of a citation issued for violation of the Prevailing Wage Law. Lighthouse directs the court to the following language:
Any person aggrieved by any citation . . . may appeal said citation... by filing a notice of appeal with the attorney general and the division of administrative law appeals . . . Any such appellant shall be granted a hearing before the division of administrative law appeals in accordance with chapter 30A. The hearing officer may affirm or if the aggrieved person demonstrates by a preponderance of evidence that the citation . .. was erroneously issued, vacate, or modify the citation . . . Any person aggrieved by a decision of the hearing officer may file an appeal in the superior court pursuant to the provisions of said chapter 30A.
(Emphasis added.)
Lighthouse then argues that the use of the term hearing officer instead of DALA in the third sentence means that the legislature intended to prohibit the process of internal review of draft decisions employed by the Chief Administrative Magistrate. Stated differently, pursuant to this §27C(b)(4), once a hearing officer has been assigned to the appeal, she must be left completely alone to issue her decision without any manner of internal agency review. The court finds this to be an artificial reading of this section. By indicating the nature of relief that a hearing officer can render after a hearing, the legislature was not limiting the internal policies that DALA could adopt in assisting the hearing officer in reaching her decision.
Lighthouse also argues that Taylor lacked the authority to appoint herself to preside over the appeal after Fletcher resigned because Fletcher had already completed her decision and DALA had no authority to revise it. This argument misstates what Taylor did with regard to Fletcher’s decision. There is no evidence that Taylor told Fletcher what her decision must be. Rather, Taylor reviewed the draft with Fletcher and asked her to revise it to be consistent with Taylor’s view of the controlling law, as expressed in Premier. Taylor had not completed her review of Fletcher’s drafts when Fletcher resigned. What would have happened if Fletcher simply refused to issue a decision that was consistent with the law, as Taylor understood the law to be, is simply unknown.[3] In this case, the Fletcher draft was not approved for publication when Fletcher resigned and therefore another hearing officer had to be assigned to complete the appeal.
Lighthouse also cites two cases for the broad proposition that DALA may not employ processes of internal review of a hearing officer’s decision before that decision issues. Neither is apposite. In Ballard v. Commissioner of Internal Revenue, 544 U.S. 40 (2005), the Supreme Court struck down the Tax Court’s policy of withholding a special trial judge’s report from the record of the tax court case. Id. at 41. The Tax Court maintained a policy by which a special trial judge would hear a case and then submit written finding of facts and opinion to a tax judge, who must then issue a final decision. Id. at 53. After having made the special judge’s findings and opinion a part of the record for many years, the Tax Court revised its policies and began to withhold the initial findings of the special judge from the record. Id. at 61. Lighthouse contends that Ballard controls the outcome of this case. Its reliance on Ballard is misplaced. The Supreme Court’s decision in Ballard was based in large part on its *495 conclusion that the Tax Court was not following its own rule that required that the special trial judge’s findings be placed in the record. Id. at 59 (“The Tax Court is obliged to follow its own rules”). There is no such limiting rule in this case. Moreover, in Ballard, the concern expressed in the majority opinion was not directed to the special judge’s conclusions of law, but rather that the findings of fact made by the judge who observed the witnesses at trial were not revealed to the parties or to an appellate court. That concern has no bearing on the present case where there has been no suggestion that DALA’s internal review process is in any way directed toward the fact-finding function of the hearing officer who presides over the trial.
Lighthouse also relies on Nesralla v. Peck, 403 Mass. 757 (1989). In Nesralla, a Superior Court judge, who presided over a juiy-waived trial, had hand written the findings of fact and conclusions of law required by Mass.R.Civ.P. 52(a) before he retired, but as a result of inadequate secretarial support, they were not timely typed and issued. Id. at 761. The Supreme Judicial Court held that “the judge’s findings of fact and conclusions of law (although still in draft form] were written while he had the authority of a Superior Court Judge” and were “valid.” Id. The court finds that Nesralla does not inform any of the issues before the court in this case. It has no bearing on whether DALA, an administrative agency not a court, may employ an internal process of review of draft decisions before they issue.
In summary, the court finds no basis to conclude that the Chief Administrative Magistrate is prohibited by statute from adopting an internal policy of reviewing draft decisions before they are issued by DALA. In this case, neither Fletcher draft was ever issued, and this court has no authority to order DALA to issue a Fletcher draft as the final decision in the Lighthouse appeal. Moreover, the Decision that Taylor issued did not in any way revise the factual findings made by Fletcher. To the contraiy, the Decision concluded that DALA did not have jurisdiction to consider the factual question of whether the work done by the Lighthouse employees constituted the work of a laborer or a mason, as that factual question was committed to the Commissioner, with no right of review by DALA. In consequence, Lighthouse’s requests for declaratory relief in Counts III and IV of the Complaint must be dismissed.
II. THE CITATION AFFIRMED IN THE DECISION AND THE FLETCHER DRAFT
G.L.c. 149, §27C(2) provides in part, “Any employer, contractor or subcontractor . . . who without a willful intent to do so, violates any provision of section ... 27 . . . shall be punished by a fine of not more than $10,000 or by imprisonment. . .” G.L.c. 149, §27C(2). Under §27C(b)(l), the OAG may enforce this statute either criminally, or with a civil fine, as was done in this case. The legislature has thus clearly stated that a violation of this statute can occur even though it was the result of innocent mistake. The “wage act” is “a strict liability statute.” Somers v. Converged Access, Inc., 454 Mass. 582, 591 (2009). The fact that Lighthouse’s violation was due to a clerical error or was self-corrected is simply not a defense.
ORDER
For the foregoing reasons, Lighthouse’s motion for partial summaiy judgment is DENIED, and the defendants’ cross motion for summaiy judgment is ALLOWED. Final judgment shall enter affirming the DALA Decision and dismissing all counts of the Complaint.

Office of the Attorney General, Fair Labor and Business Practices Division v. Executive Office for Administration and Finance, Division of Administrative Law Appeals, CA No. 06-5393 (hereafter referred to as Premier]. As this case does not turn on the issue of law discussed in Premier and Fletcher’s draft, the court addresses it only in summaiy fashion. In Premier, Judge Cratsley concluded that on appeal to DALA from a citation issued by the OAG for violation of the Prevailing Wage Law, under the applicable statutes, DALÁ did not have júrtsdiction to decide if the Commissioner had properly classified a category of work as one occupation (with a higher minimum wage) rather than another occupation listed on a wage rate sheet. In Fletcher’s draft, she had done just that. Based on the evidence presented at the DALA hearing, Fletcher decided that the work that the employees in question were doing on the Project should cause them to be classified as “Laborers” and the Commissioner had erred in classifying them as “Masons” who were entitled to a higher minimum wage. She therefore vacated the citations relating to the three employees who had been paid the prevailing wage for laborers and affirmed the citation with respect to the employee who had not been paid at any prevailing wage.

DALA and the OAG argue that Lighthouse is without standing to pursue its claims in Counts III and IV, to the extent they relate to the citations that were vacated, because Lighthouse is not a person “aggrieved by a final decision of an agency in an adjudicatory proceeding.” See G.L.c. 30A, §14. True enough for a 30A administrative appeal, but here Lighthouse does not seek review of DALA’s decision under 30A, but challenges Taylor’s authority not to issue Fletcher’s draft as the final decision of DALA. G.L.c. 231A, §2 (a provision of the Declaratory Judgment Act) appears to be broad enough to provide Lighthouse with standing, and this court with jurisdiction, to consider whether Taylor exceeded her authority in reviewing and not issuing Fletcher’s draft: “The procedure under section one may be used to secure determinations of right . . . under statute ... or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination.”

Indeed, in this case, but for the letter that Fletcher wrote to the parties after she had resigned her position, the existence of these drafts would be unknown. Generally, “(i]nquiiy into the mental processes of administrative decision makers at an administrative hearing is inappropriate.” New England Medical Center, Inc. v. Rate Setting Comm'n, 384 Mass. 46, 56 (1981).