GODDARD MEMORIAL HOSPITAL vs. RATE SETTING
COMMISSION & another[1].

Suffolk. October 5, 1988. — January 9, 1989.

Present: HENNESSEY, C.J., LIACOS, LYNCH, & O'CONNOR, JJ.

*Hospital,* Costs. *Hospital Service Corporation. Rate Setting Commission. Arbitration,* Vacating award. *Statute,* Construction. *Administrative Law,* Agency, Agency's interpretation of statute, Judicial review, Failure to raise issue before agency. *Regulation.*

The Rate Setting Commission's approval of an industry-wide master reimbursement agreement between hospitals and a hospital service corporation did not preclude the commission's review of a subsequent decision and award by an arbitrator in a dispute submitted to arbitration involving the annualization of certain costs under an individualized reimbursement agreement between a single hospital and the hospital service corporation, where, under the agreement, although arbitration was binding on the parties, the commission explicitly reserved to itself the authority under G. L. c. 176A, § 5, to review the reasonableness of all rates of payment including those resulting from agreements between the parties. [740-741]

The Rate Setting Commission had authority under G. L. c. 176A, § 5, to review the reasonableness of the rate of payment that resulted from the annualization of a wage increase granted by a hospital to its employees under a reimbursement agreement between the hospital and a hospital service corporation. [741-744]

The Rate Setting Commission properly interpreted language in a reimbursement agreement between a hospital and a hospital service corporation to allow the hospital service corporation to review not only the reasonableness of the cost of a wage increase granted by the hospital to its employees, but also the reasonableness of annualizing that cost. [744-745]

A hospital could not successfully challenge the Rate Setting Commission's reliance on the record compiled before an arbitrator in a dispute submitted to arbitration involving the annualization of certain costs under a reimbursement agreement between the hospital and a hospital service corporation where, although the commission, in determining whether rates of payment reflected reasonable costs, solicited the hospital's views concerning the recommendation of the commission's staff that annualization of a wage increase granted by the hospital be disapproved, the hospital did not seek to present other evidence. [745-746]

[1] Blue Cross of Massachusetts, Inc.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 23, 1986.

The case was reported by *Nolan, J.*

*Jeffrey L. Heidt* for the plaintiff.

*William L. Pardee,* Assistant Attorney General, for Rate Setting Commission.

*Edward J. Dailey* for Blue Cross of Massachusetts, Inc.

LIACOS, J. This is an action by Goddard Memorial Hospital of Stoughton (Goddard), pursuant to G. L. c. 176A, § 5, seventeenth par. (1986 ed. & Supp. 1988), challenging a decision of the Rate Setting Commission (commission). The commission disapproved the annualization of certain costs under a reimbursement agreement between Goddard and Blue Cross of Massachusetts, Inc. (Blue Cross). The costs in dispute had been submitted to arbitration, but the commission declined to be bound by the arbitrator's award. Goddard argues that the commission's earlier approval of the reimbursement agreement should bar its review of the arbitrator's decision and award under that agreement. Goodard also argues that the commission's decision is arbitrary, capricious, and unsupported by the evidence.[2] The case is before us on reservation and report, without a decision, from a single justice of this court. We reject Goddard's arguments and uphold the commission's action.

The facts are as follows. In June, 1981, the commission approved an industry-wide master reimbursement agreement, known as HA-29, between hospitals and Blue Cross.[3] Each hospital could then enter into an individualized HA-29 with Blue Cross. Goddard and Blue Cross adopted HA-29 in August, 1981, for a three-year term from October 1, 1981, to September 30, 1984. The commission approved their agreement in September, 1981. However, the commission expressly "retain[ed] the authority under G. L. C. 176A § 5 to review the reasonable-

---

[2] Goddard argued, in addition, that the commission has no jurisdiction under G. L. c. 251 (1986 ed.) to review an arbitration award. In the view we take of the case, G. L. c. 251 is inapplicable to this kind of proceeding.

[3] The negotiations that led to HA-29 were protracted. For a history of the negotiations which were an antecedent to HA-29, see *New England Medical Center, Inc.* v. *Rate Setting Comm'n,* 384 Mass. 46, 48-50 (1981).

ness of all rates of payment including those resulting from agreements between the parties."

The parties agree that HA-29 was an unprecedented agreement. It appears that the goal of HA-29 is to provide "an incentive to achieve greater efficiency and economy in the manner of providing health care services without adversely affecting the quality of such services," in the words of the eleventh paragraph of G. L. c. 176A, § 5. The distinctive mechanism of HA-29 is to base reimbursement on a hospital's Maximum Allowable Cost (MAC). A hospital's MAC is based initially on its actual, reasonable costs for fiscal year 1981, the base year. This basis is adjusted by a formula, contained in the agreement, for inflation and certain other acceptable expenses. In subsequent years, if a hospital's actual costs exceed its MAC, it must absorb the loss. Conversely, if its actual costs are less than its MAC, a hospital may retain the difference. Thus, the hospital is rewarded for improved efficiency and cost containment. Counsel for Goddard and the commission agreed in oral argument that, under HA-29 and successor agreements, the hospital's costs for 1981 will largely determine the MAC for the following ten years.

In computing the MAC, Goddard was permitted, under HA-29, to "annualize" certain costs. Thus, "[w]age and fringe benefits increases which depart from normal wage and salary policies of the Hospital . . . will be annualized if one of the following criteria is met. [1] The increases or costs were included in the Hospital's budget for the base year [or] [2] The increases or costs were approved or under consideration by the Hospital prior to May 11, 1981 (for the first base year only)." In addition, HA-29 provides that "[a]ny cost which is annualized is subject to review by Blue Cross for determination of reasonableness, and any dispute concerning annualized costs may be resolved by the Dispute Procedure under Article VII." Article VII provides the dispute procedure under which the arbitrator issued his decision.

In 1981, Goddard gave its employees two wage increases. The hospital had begun a major renovation and construction project during that year, and its average occupancy rate had

been the highest for acute general hospitals in Massachusetts for the second consecutive year. Goddard decided that these circumstances merited a departure from its normal wage and salary policy. In May, 1980, Goddard's trustees approved a single, annual wage increase of 8%, effective November, 1980. In May, 1981, prior to the May 11 cut-off date for annualization under HA-29, Goddard's personnel policy committee recommended a 5% wage increase, effective July 1, 1981, and another 5% increase "on the usual November date." There is no suggestion that Goddard knew of the proposed provisions of HA-29 when it recommended the July 1, 1981, wage increase.

Blue Cross refused to annualize the July 1, 1981, wage increase. It took the position that, even if the increase was reasonable, the annualization was not. Goddard then invoked the dispute process of HA-29, Article VII, to resolve whether Blue Cross properly had exercised its function under the provision that "[a]ny cost which is annualized is subject to review by Blue Cross for determination of reasonableness." The arbitrator rendered his decision and award on November 14, 1984. The arbitrator construed HA-29 to permit Blue Cross to review only the reasonableness of the cost to Goddard in fiscal year 1981 of the July 1, 1981, wage increase, rather than the reasonableness of annualizing that cost, or the reasonableness of including the annualized cost in the base year costs for the purpose of recalculating the MCAs for later years.

In compliance with the arbitrator's award, in January, 1985, Blue Cross submitted an adjustment to the commission in the amount of $536,847 to Goddard's base year costs under HA-29.[4] However, Blue Cross noted its disagreement with the arbitrator's decision and invited the commission to review the reasonableness of the rate of payment under HA-29 in light of the annualized cost of the wage increase. In February, 1985, the commission indicated its intention to review the reasonableness of the rate of payment under HA-29. In February, 1986, Goddard and Blue Cross presented oral argument and submitted

---

[4] Blue Cross maintains that, as a result of this adjustment, its increased payments would amount to over $1.9 million over the ten years affected by the base year costs.

written statements to a commissioner, addressing the commission's authority to reverse or to modify the arbitrator's award.

In October, 1986, the commissioner submitted his recommendation to the commission. He concluded that the commission was not bound by the arbitrator's decision, that it could reexamine the "record and rulings compiled by the Arbitrator," and that the arbitrator's interpretation of HA-29 was incorrect. He also concluded that the commission possessed the "power to review the continuing reasonableness of rates of payment under the contracts between hospitals and Blue Cross." The commissioner then addressed the reasonableness of the rate of payment that would result from annualizing Goddard's July 1, 1981, wage increase. The commissioner found that Goddard's employees received, "in effect, a normal cost-of-living increase of 10 percent in November 1981 (pursuant to the hospital's past policy and practice) and a one-time bonus of 1.67 percent of annual salary (5 percent of their annual salary for four months)."[5] He further found that Goddard "received more than 10 percent of its base year salary costs in its . . . 1982 MAC inflation allowance [and] [i]t also received the cost of the bonus in its base year costs even though it had undertaken no obligation to its employees to continue it." The commissioner concluded that annualization of the July 1, 1981, wage increase would result in unreasonable rates of payment in subsequent years, and therefore recommended that the commission vote to disapprove the requested annualization of $536,847. The commission thereafter adopted the commissioner's findings and recommended decision.

1. Goddard argues that the commission's reversal of the arbitrator's award is not authorized by, and is inconsistent with, HA-29. Goddard argues that the commission is bound by the dispute procedures of HA-29 because it approved HA-29. Goddard's argument seems premised on the notion that, by its regulatory approval of HA-29, the commission became a

---

[5] In its brief, the commission states that the increase was in effect for only the final three months of Fiscal Year 1981, and that therefore the nominal 5% increase was actually a 1.25% increase. Goddard does not address this discrepancy, nor do we.

party to the contract. This argument is fallacious. HA-29 does not purport to bind the commission. Under Article VII of HA-29, arbitration is binding on Blue Cross and Goddard, but is explicitly made "subject only to the Commission's approval of the settlement to the extent, if any, required by G. L. c. 176A." In addition, the commission did not purport to bind itself. In approving the agreement between Goddard and Blue Cross, the commission explicitly reserved to itself the authority "under G. L. C 176A s 5 to review the reasonableness of all rates of payment including those resulting from agreements between the parties." We recognize that, under G. L. c. 251, § 12 (1986 ed.), a court may not vacate or refuse to confirm an arbitration award even though the arbitrator may have made an error in reaching a decision, absent fraud or other unusual circumstances. *Lawrence* v. *Falzarano,* 380 Mass. 18, 26-27 (1980).[6] However, the arbitrator's decision does not preclude the commission from exercising its statutory duties pertaining to HA-29 and rates of payment under that agreement. See *School Comm. of Hanover* v. *Curry,* 369 Mass. 683, 685 (1976). Even if the commission had purported to bind itself not to review the reasonableness of the rates of payment under HA-29, we doubt that it could so limit its statutory duties.[7] *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 111-113 (1977).

2. We turn next to the commission's statutory authority to review the reasonableness of the rate of payment that resulted from annualizing Goddard's wage increase of July 1, 1981. General Laws c. 176A, § 5, tenth par., provides in part:

---

[6] The record does not show any attempt by Goddard to confirm the arbitrator's award in the Superior Court. G. L. c. 251, § 12. We do not imply by this comment that such an effort would have been appropriate.

[7] Goddard's reference to *Baystate Medical Center* v. *Blue Cross of Mass., Inc.,* 382 Mass. 485, 487 n.6 (1981), does not assist its argument. The commission was not a party to that action, and we noted only that the parties had bound themselves to resolve disputes concerning the interpretation or application of the agreement by arbitration. Cf. *Tyman, supra* at 115 (school committee was party to collective bargaining agreement).

> "No rates of payment shall be approved, nor their con-
> tinuance be permitted by the commission, unless such
> rates reflect reasonable costs or are based on charges
> made to the general public, whichever is lower."

Goddard argues that the commission cannot act pursuant to
this language because it approved HA-29 under the eleventh
paragraph and not under the tenth paragraph. Even if we were
to assume that the commission approved HA-29 under the
eleventh paragraph, we do no accept Goddard's argument.

General Laws c. 176A, § 5, eleventh par., provides, in its
entirety:

> "Other requirements of this section notwithstanding the
> commission may approve any rate of payment to any
> provider or class of providers if such rate, in the opinion
> of the commission, contains an incentive to achieve
> greater efficiency and economy in the manner of providing
> health care services without adversely affecting the quality
> of. such services."

Goddard argues that the phrase, "[o]ther requirements of this
section notwithstanding," means that the commission is not.
authorized to review the rates of payment for reasonableness,
as required under the tenth paragraph. In support of this argu-
ment, Goddard cites the rule, as stated in *Beeler* v. *Downey*,
387 Mass. 609, 616 (1982), that, "where the Legislature has
employed specific language in one paragraph, but not in
another, the language should not be implied where it is not
present."

This argument misperceives the statutory policy embodied
in § 5, namely, to seek to contain hospital costs. A traditional
method, as set forth in the tenth paragraph, requires hospital
rates to be primarily based on "reasonable costs." *New England
Medical Center, Inc.* v. *Rate Setting Comm'n*, 384 Mass. 46,
51 (1981).[8] The other method, more experimental in nature, is

---

[8] General Laws c. 176A, § 5, fourth par., has similar provisions as to
"reimbursement for health services other than hospital services" by requiring

embodied in the eleventh paragraph allowing prospective reimbursement methods which provide an "incentive to achieve greater efficiency and economy" in providing health care services. *Id.* at 51 n.5. Thus, the words in the eleventh paragraph, "[o]ther requirements of *this section* notwithstanding" (emphasis supplied), are not designed to limit the commission's power of review, nor are they applicable only to the preceding paragraph. What these words mean, simply, is that other methods of cost containment, such as HA-29, may be approved by the commission so long as these methods do not "adversely affect[ ] the quality of [health care] services."

We cannot credit the argument that the Legislature, in furtherance of the commission's power under the eleventh paragraph to achieve greater efficiency and economy, released the commission from its obligation to implement the public policy of hospital service cost containment. To do so would leave the eleventh paragraph devoid of efficacy or meaning. We must read the statute in a way to give it a sensible meaning in furtherance of the aims and objectives of the legislation. *Lexington* v. *Bedford,* 378 Mass. 562, 570 (1979).

Goddard argues, citing *Commonwealth* v. *Mercy Hosp.,* 364 Mass. 515 (1974), that the commission cannot impinge on the voluntariness of the contractual relationship between Goddard and Blue Cross. In that case, we held that G. L. c. 176A does not require hospitals to accept payments from Blue Cross as payments in full for services performed for subscribers. In reaching that holding, we stated that G. L. c. 176A, § 1, "plainly evinces an intention to regulate a relationship which is voluntary on both sides." *Id.* at 518. Goddard would have us ignore the intention of the Legislature to regulate hospital costs and would have us focus solely on the voluntariness of the relationship between Goddard and Blue Cross. This we refuse to do, for to do so would skew the statutory scheme. Per-

that "[n]o rates of payment under any such contract with a provider of other health services shall be approved nor their continuance be permitted by the commission, unless such rates are not excessive, not inadequate and not unfairly discriminatory in relation to other such providers who have entered into such contracts with such corporation."

haps a greater degree of voluntariness is implicit in the incentive-based approach of the eleventh paragraph of § 5 than in the tenth paragraph. However, it is generally within the sound discretion of the commission to balance the need to encourage voluntary incentives to maximize efficiency with the need to review those incentives and the resultant rates of payment, to be certain that they achieve that efficiency. "'An agency . . . has considerable leeway in interpreting a statute it is charged with enforcing.' *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health,* 379 Mass. 70, 75 (1979)." *Cherubino* v. *Board of Registration of Chiropractors, ante* 350, 358 (1988). There is no showing that the commission has exceeded its statutory mandate in this regard. Cf. *New England Medical Center, Inc.* v. *Rate Setting Comm'n, supra* at 54-55 (withdrawal of approval from interim reimbursement agreement, based on breakdown of negotiations for replacement agreement, exceeded statutory authority). The commission's power to approve, or to disapprove, reimbursement agreements implies the power to elaborate what it approved. It is a general rule that powers granted an agency include those reasonably implied. *Beth Israel Hosp. Ass'n* v. *Board of Registration in Medicine,* 401 Mass. 172, 176 (1987).

3. Finally, we consider Goddard's claims that the commission's actions were arbitrary, capricious, or unsupported by substantial evidence. We consider both the commission's interpretation and application of HA-29 and the commission's determination of the reasonableness of rates of payment under G. L. c. 176A, § 5.

a. In reviewing the commission's interpretation of HA-29, we accord that interpretation substantial deference. "'Although we must examine the entire record, including any evidence that detracts from the weight of the [commission's] decision . . . we may not substitute our judgment for that of the [commission] . . .' (citations omitted). *1001 Plays, Inc.* v. *Mayor of Boston,* 387 Mass. 879, 885 (1983)." *Craven* v. *State Ethics Comm'n,* 390 Mass. 191, 201 (1983). The commission focused on two sentences of HA-29 relating to annualization: "Wage . . . increases which depart from normal wage . . . poli-

cies of the Hospital . . . will be annualized [under conditions that were met by Goddard]" and "[a]ny cost which is annualized is subject to review by Blue Cross for determination of reasonableness." The commission advanced three reasons why, in context, this language authorizes Blue Cross to review not only the reasonableness of the cost of the wage increase itself, but also the reasonableness of annualizing that cost. The commission considered: (1) the objectives of the contract to contain costs and to establish base-year costs that are representative of costs expected to be incurred in later years; (2) specific language in HA-29 that appears to conflict with the arbitrator's interpretation; and (3) specific language of HA-29 that appears to make the arbitrator's interpretation redundant. The commission found that the following language of HA-29 conflicts with the arbitrator's interpretation: "if the adjustment [to base year costs] is a shift in the timing of salary and wage increases, a full annualization may not be appropriate"; "[annualization] is intended to measure wage and benefit increases which are a departure from normal wage and salary policies of the Hospital"; and "[a]nnualizations are subject to review for reasonableness by Blue Cross [and] [d]isputes may be appealed through the dispute procedure." The commission also found that it would be redundant to read the phrase, "[a]ny cost which is annualized is subject to review by Blue Cross for determination of reasonableness," to mean that Blue Cross could review only the cost itself for reasonableness because, in an earlier provision, HA-29 defines reimbursable costs to mean costs which are "reasonable within the meaning of G. L. c. 176, § 5." We conclude, based on the three reasons set forth above and after review of the entire record, that the commission acted well within its discretion in finding that Blue Cross could review the annualization of Goddard's wage increase for reasonableness.

b. In determining whether rates of payment reflect reasonable costs, the commission, in January, 1986, solicited Goddard's views and arguments concerning the recommendation of its staff that annualization of the July 1, 1981, wage increase be disapproved. The commission indicated that it would pro-

ceed, based on the record compiled before the arbitrator, yet Goddard did not seek to present other evidence. Even if the commission's reliance on the record before the arbitrator was error, "[a] party cannot remain silent while an administrative agency appears to be proceeding in error and later complain of the error on judicial review." *Metropolitan Property & Liab. Ins. Co.* v. *Commissioner of Ins.,* 382 Mass. 514, 524 (1981). Therefore, we do not disturb the commission's determination that the proposed annualization of Goddard's July 1, 1981, wage increase would result in a rate of payment that does not reflect reasonable costs. In sum, Goddard is not entitled to its requested annualization of the July 1, 1981, wage increase. The decision of the commission is affirmed.

*So ordered.*