EMERSON HOSPITAL *vs.* RATE SETTING COMMISSION.

Suffolk. November 8, 1990. - December 11, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Hospital*, Costs. *Rate Setting Commission. Regulation. Administrative Law*, Agency's interpretation of regulation.

In disapproving a hospital's request for authorization under its reimbursement agreement with Blue Cross of Massachusetts, Inc., to recover an increase in utility costs caused by an expansion of the hospital's facilities, the Rate Setting Commission, consistent with 114.1 Code Mass. Regs. § 27.03 (3) (c) (1986), could properly consider the request on the basis of the hospital's plant operations "cost center," a figure combining numerous operating expenses, including utilities, rather than examining the utilities expenses as a separate cost item; nor was the disapproval arbitrary, capricious, or unsupported by substantial evidence. [788-791]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 26, 1988.

The case was reported by *Greaney*, J.

*Stephen M. Weiner* (*Michael F. Connolly* with him) for the plaintiff.

*William L. Pardee*, Assistant Attorney General, for the defendant.

LYNCH, J. Emerson Hospital (Emerson) seeks review of a decision of the Rate Setting Commission (commission) pursuant to G. L. c. 176A, § 5 (1988 ed.). The commission denied Emerson the necessary authorization under the hospital's reimbursement agreement with Blue Cross of Massachusetts, Inc. (Blue Cross), to recover an increase in the cost of utilities caused by an expansion of the hospital's facilities. Emerson contends that the commission's decision violated its own administrative regulation, and therefore was based on an error of law, unsupported by substantial evi-

dence, arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. A single justice of this court reserved and reported the case without decision to the full court, and we now affirm the commission's decision.[1]

The following facts are not in dispute. Reimbursement by Blue Cross to Emerson for hospital services in fiscal years 1986, 1987, and 1988 was governed by a contract between the two known as HA-30, subject to review by the commission under G. L. c. 176A, § 5. The contract is modeled on an industry-wide master agreement negotiated by Blue Cross and the Massachusetts Hospital Association and approved by the commission. See G. L. c. 176A, § 5, sixth par. - ninth par. Under HA-30, Emerson's capital costs are reimbursed to the extent they are "reasonable." However, the contract fixed the amount that Blue Cross will reimburse Emerson for operating costs at a "Maximum Allowable Cost," or MAC. If Emerson's actual operating costs in a given year exceed the MAC, "it must absorb the loss. Conversely, if [Emerson's] actual costs are less than its MAC, [the] hospital may retain the difference. Thus, the hospital is rewarded for improved efficiency and cost containment." *Goddard Memorial Hosp.* v. *Rate Setting Comm'n*, 403 Mass. 736, 738 (1989).

The contract defines the MAC as Emerson's audited costs for 1984, the base year,[2] adjusted to account for inflation, changes in the volume of services delivered by Emerson, and

---

[1]The single justice also reported Emerson's motion to expand the administrative record, pursuant to G. L. c. 30A, § 14 (6) (1988 ed.), to include two documents that the hospital had submitted to the commission at an earlier, separate proceeding. These documents, illustrating the uncontested fact that Emerson realized savings in plant operations independent of the expansion project, are by Emerson's admission merely cumulative. Emerson has failed to present any reason why it did not resubmit the documents to the commission in this proceeding. Furthermore, we can imagine no justification for imposing on the commission the obligation to review the files from all its prior dealings with Emerson when the hospital files an exception request. Emerson's motion is denied.

[2]To be more precise, .HA-30 defines the base year MAC as the 1984 MAC determined under the predecessor contract between the parties, known as HA-29. This figure is roughly equivalent to Emerson's operating costs for fiscal year 1984.

certain exception cost allowances. One such exception allowance covers increases in operating costs associated with a capital project that has received "Determination of Need" (DoN) approval from the Department of Public Health. These expenses, HA-30 provides, are "eligible for recognition as an exception," subject to the commission's approval. Of course, the effect of such exceptions is to increase Emerson's payment from Blue Cross for operating expenses in the relevant fiscal year.

In September, 1983, Emerson obtained DoN approval for a construction project expanding its size and adding new beds. As amended in August, 1985, the project called for the construction of one new building and the renovation of an existing building. The first phase of the project went into operation in September, 1987, the last month of Emerson's 1987 fiscal year.

In January, 1988, Emerson filed an exception request with the commission seeking, in pertinent part, $16,631 in increased operating costs incurred in operating its newly-opened facilities. Nearly all of these expenses ($14,685) represented increases in utilities costs. The commission's analysis of Emerson's request focused ·on the plant operations "cost center," a figure that bundles together a number of operating expenses, including utilities. Because unrelated cost reductions exceeded the increase in utilities associated with operating the new facilities, the net of expenses incurred in the plant operations cost center for the fiscal year 1987 was less than the 1984 base year operating costs adjusted for inflation. Thus Emerson's MAC, even without a specific allowance for the increased utilities expenses, exceeded its actual operating costs. Therefore, reasoning that Emerson had a "sufficient base to cover the rate year costs," the commission disapproved the exception request.

In this action, Emerson argues that the commission's decision violated one of its own regulations. That regulation provides, in part: "The Commission shall not offset against the approved DoN exception cost allowance adjustments to patient care costs when such adjustments are unrelated to the

DoN." 114.1 Code Mass. Regs. § 27.03 (3) (c) (1986). The commission violated this regulation, Emerson contends, by examining only the sum of operating costs reflected in the plant operations cost center, effectively offsetting the increases in utilities costs associated with the expansion project against management savings unrelated to the project. Emerson suggests that the regulation requires the commission to examine utilities expenses as a separate cost item, rather than follow its standard methodology of not dissecting the cost centers into smaller accounting units. We disagree.

As a threshold matter, we note that the commission's interpretations of HA-30 and the regulations passed to govern its implementation are entitled to substantial deference. *Goddard Memorial Hosp.*, *supra* at 744. In reviewing Emerson's claim, this court must "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7) (1988 ed.) (expressly invoked by G. L. c. 176A, § 5, eighteenth par.). The commission's decision survives scrutiny under this standard.

A close reading of the regulation in question reveals that it is not applicable in this situation. The regulation states that the commission may not offset unrelated cost adjustments against an "*approved* DoN exception cost allowance" (emphasis added). 114.1 Code Mass. Regs. § 27.03 (3) (c). The salient word "approved" in this regulation shifts the terminology of § 27.03 (3), which in prior paragraphs specifically refers to "DoN exception request[s]." *Id.* at § 27.03 (3) (first par.), (3) (b). Thus, the regulation invoked by Emerson seems specifically to exclude from its scope exception requests that have not been approved, such as Emerson's. We interpret administrative regulations according to traditional rules of statutory construction, and thus we consider none of the words of a regulation to be superfluous. *Hellman* v. *Board of Registration in Medicine*, 404 Mass. 800, 803 (1989). Nevertheless, Emerson argues that this court should construe the regulation to apply to unapproved exception requests because the regulation occurs amid a series of rules

governing the exception approval process. See 114.1 Code
Mass. Regs. § 27.03 (3). Whatever inferential value the
placement of the regulation may have in this instance, how-
ever, cannot justify a construction of the regulation that con-
tradicts its plain language.

Emerson further contends that the policy interest embod-
ied in HA-30, namely containing hospital costs, dictates that
the regulation must apply to its exception request. HA-30 re-
wards management efficiency by permitting Emerson to re-
tain the excess of the fixed MAC payment over the hospital's
actual costs. *Goddard Memorial Hosp., supra* at 738. Emer-
son argues that, by analyzing only the plant operations cost
center in this instance, the commission effectively offset man-
agement savings in one area against cost increases in an-
other, reducing the hospital's profit from cost savings. Thus,
the commission arguably undermined the hospital's incentive
to contain operating costs. In order to avoid this effect and to
maintain the incentive to efficient management, according to
Emerson, the commission should be required to examine util-
ities expenses in isolation from the other cost items reflected
in the plant operations cost center.

This policy argument is not persuasive. It is not practical
to require the commission to analyze utilities costs individu-
ally because, as Emerson concedes, such costs cut across hos-
pital departments and therefore cannot be accurately attrib-
uted to the various hospital units. As a result, under the
methodology for which Emerson argues, it would be difficult,
if not impossible, to verify the information contained in ex-
ception requests. In addition, G. L. c. 176A, § 5, twelfth
par., commits to the commission's discretion the choice of
which data it will examine in determining whether an excep-
tion· is allowable under HA-30. Therefore the commission's
choice of cost centers as the appropriate accounting unit is
owed deference, and this court will overrule that choice only
if it is unreasonable. *Kraft* v. *Commissioner of Pub. Welfare,*
398 Mass. 357, 366 (1986). We view the commission's meth-
odology as a reasonable compromise between practical ac-
counting limitations and the goal of documenting and re-

warding cost efficiencies. We conclude that 114.1 Code Mass. Regs. § 27.03 (3) (c), by its plain terms and for policy reasons, cannot be construed to apply to Emerson's exception request.

Stripped of that regulation, Emerson's claim reduces to the argument that the commission's denial of the requested exception was arbitrary, capricious, or unsupported by substantial evidence. Under HA-30, incremental increases in operating costs associated with a DoN-approved project are not automatically approvable, but are "eligible for recognition as an exception . . . subject to any specific criteria for reasonableness which are established by the Commission." The commission in turn has formulated a variety of tests under which exception requests for incremental operating costs are screened for reasonableness. See 114.1 Code Mass. Regs. § 27.03 (3). The underlying concern of these tests is that exception allowances, together with the MAC, fairly reflect the hospital's operating costs. Thus, the relevant regulations require that the commission take into account existing wage and staffing patterns at the hospital, *id.* at § 27.03 (3) (b); whether the increased expenses have been accounted for through volume allowances, *id.* at § 27.03 (3) (d); and, in cases involving hospital expansion, comparative costs in similar units at Emerson and other hospitals, *id.* at § 27.03 (3) (e) (3) (c). Taken together, these regulations reflect a concern that exception allowances be "reasonable" in light of actual operating costs. The commission's denial of Emerson's exception request on the ground that its existing MAC was sufficient to cover operating expenses was entirely consistent with this focus. There is no basis for holding the commission's action to be arbitrary, capricious, or unsupported by the evidence.

In conclusion, we hold that 114.1 Code Mass. Regs. § 27.03 (3) (c) does not prevent the commission from analyzing unapproved exception requests on the basis of cost centers. We further hold that the commission's disapproval of Emerson's exception request in this case was neither arbi-

trary, capricious, nor unsupported by substantial evidence. Judgment is to enter affirming the commission's decision.

*So ordered.*