REHAB ASSOCIATES OF NEW ENGLAND *vs.* BLUE CROSS &
BLUE SHIELD OF MASSACHUSETTS, INC.

No. 94-P-411.

Suffolk. November 9, 1994. - January 25, 1995.

Present: BROWN, FINE, & IRELAND, JJ.*

Further appellate review granted, 420 Mass. 1102 (1995).

*Hospital Service Corporation. Medical Service Corporation. Administrative Law*, Medical service corporation, Agency's authority. *Consumer Protection Act*, Availability of remedy, Medical service corporation.

A nonprofit hospital service corporation, which generally may exercise reasonable discretion in determining whether to enter into a contract with a particular institutional health care provider under G. L. c. 176A, § 5, was obliged to enter into a contractual relationship with a health care facility for that period during which the facility was required under its operating license to serve, and did serve, the hospital service corporation's subscribers, while complying with the corporation's qualifying criteria for such a contract. [66-67] BROWN, J., concurring.

In a claim brought under G. L. c. 93A, and G. L. c. 176D, § 2, there was no error in the judge's conclusion that a hospital service corporation did not act arbitrarily and did not engage in any unfair or deceptive act or practice in its failure to enter into a contract with a particular institutional health care provider. [67-68] BROWN, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on March 21, 1990.

The case was heard by *Barbara A. Dortch*, J.

*Rudolph F. Pierce* for the plaintiff.

*Edward J. Dailey* for the defendant.

FINE, J. In a complaint filed in the Superior Court on March 21, 1990, Rehab Associates of New England (RANE), sought a declaratory judgment, injunctive relief, and damages from Blue Cross & Blue Shield of Massachusetts, Inc. (Blue Cross), based upon Blue Cross's refusal to enter into a contractual relationship with RANE. RANE relied on various statutes, which we shall discuss, and on G. L.

---

*Justice Fine participated in the deliberation on this case and authored the opinion prior to her retirement.

c. 93A. After a jury-waived trial, limited to the issue of liability, judgment was entered in favor of Blue Cross on all claims. On the unique and undisputed facts of this case, we conclude that Blue Cross had an obligation to enter into a contractual relationship with RANE. We therefore reverse the judgment and remand the case for an adjudication of damages.

We summarize the pertinent facts found by the Superior Court judge as well as some uncontested facts set forth in the record.

RANE operates a freestanding magnetic resonance imaging (MRI)[1] facility, Merrimack Valley MRI, in Methuen which serves the Merrimack valley and southern New Hampshire. The facility has existed since 1987, but RANE assumed ownership in 1988. Under RANE's ownership, the facility was licensed by the Department of Public Health (department) on February 28, 1989, and began to serve patients on March 1, 1989. As a part of the licensure process, the department issued a "determination of need"[2] for new technology, as mandated by G. L. c. 111, § 25C, in August 1988. The "determination of need" was subject to the condition that "[f]or Massachusetts residents, RANE shall not consider ability to pay or insurance status in the patient selection process." Between its first day of operation and June 30, 1991, the facility conducted over 2,200 scans for the twenty percent of its patients who were Blue Cross subscribers. During this period, Blue Shield, and, after its merger with Blue Cross,[3] Blue Cross provided reimbursement for the professional component of the MRI, that is, the interpretation of the scans by radiologists. The technical component,

---

[1] An MRI provides an image of the body through the use of magnetic fields, radiowaves, and computer reconstruction.

[2] The department's determination of need is based on the proposed facility's financial and operational feasibility, the need in the community, and an assessment of alternative ways of meeting the health care needs of the population involved.

[3] A merger between Blue Cross and Blue Shield was approved by the Legislature in 1988. St. 1988, c. 160.

i.e., the actual performance of the MRI scans, was not covered by the agreement and was not reimbursed.

Blue Cross is a nonprofit hospital service corporation regulated by the Rate Setting Commission and governed under G. L. c. 176A. It provides coverage for the technical aspect of hospital (and other institutional) services and procedures. Blue Cross offers participating diagnostic imaging facility (DIF-1) agreements for MRI facilities seeking reimbursement for the technical component of their scans. The rates of payment specified in the contracts must be approved by the Rate Setting Commission. G. L. c. 176A, § 5.

In the summer of 1989, RANE applied for a DIF-1 contract with Blue Cross. RANE completed Blue Cross's written application, and a Blue Cross reviewer, Evelyn Callahan, conducted an on-site assessment of the facility. Blue Cross informed RANE that, to qualify for a DIF-1 contract, it would have to improve its medical necessity guidelines, its review procedures, and its clinical oversight committee. RANE complied, and, on August 16, 1989, Callahan acknowledged that it was in compliance with the requirements in the DIF-1 application. In October of 1989, however, Blue Cross suspended the processing of RANE's application "pending review and/or resolution of issues Blue Cross and Blue Shield of Massachusetts, Inc. has with Northeast Rehab Hospital." In a letter dated February 7, 1990, Blue Cross explained that it was not in its "best business interests" to accept RANE's application.

The majority of the limited partners of RANE, including Dr. Howard Gardner, were also limited partners in a limited partnership that has a forty-nine percent interest in the Northeast Rehabilitation Hospital (hospital). Since 1988, Blue Cross had an ongoing dispute with the hospital administrators, including Dr. Gardner, about the hospital's alleged failure to comply with Blue Cross's utilization review program and medical necessity requirements. The amount in dispute was $1.7 million, and Blue Cross was required to spend $104,000 to review the matter. Blue Cross and the hospital settled the dispute in 1993. Blue Cross's reason for

38 Mass. App. Ct. 62                    65

Rehab Associates of New England v. Blue Cross & Blue Shield of Massachusetts, Inc.

refusing to enter into a DIF-1 contract with RANE was to avoid further dealings with the principals of RANE, who are associated with the hospital.

The judge recognized that two statutes, G. L. c. 176A and G. L. c. 176B, bore on the issue before her. According to G. L. c. 176A, § 5, as appearing in St. 1969, c. 874, § 1: "In providing reimbursement for health services other than hospital services, any hospital service corporation may enter into contracts for the furnishing of such health services with providers thereof." General Laws c. 176B, § 4, as appearing in St. 1988, c. 23, § 59, governing medical service corporations, has comparable language: "[a]ny medical service corporation may enter into contracts with . . . participating physicians, . . . and other providers of health services licensed under the laws of the commonwealth." General Laws c. 176B, § 4, however, also contains a clause that requires: "no participating provider shall be denied the right to enter into any agreement with any medical service corporation by reason of any unfair or arbitrary discrimination."

The judge concluded, first, that RANE had no statutory right to enter into a DIF-1 contract with Blue Cross. She determined that G. L. c. 176B, § 4, had no application to RANE's claim as it applied only to professional providers and not to institutional providers. Relying on *Goddard Memorial Hosp.* v. *Rate Setting Commn.*, 403 Mass. 736, 743-744 (1989), she interpreted G. L. c. 176A, § 5, as allowing a hospital service corporation such as Blue Cross to exercise discretion whether to enter into a contract with a particular provider. With respect to RANE's G. L. c. 93A claim (and its corresponding claim under G. L. c. 176D, § 2), the judge concluded that Blue Cross's refusal of a contract was not an unfair or deceptive act or practice. The refusal, for the purpose of avoiding further dealings with individuals with whom Blue Cross had problems in the past, was not, in her view, arbitrary or unreasonable. The judge found no merit in the contention that other statutes afforded RANE the right to relief.

1. *RANE's rights under G. L. c. 176A.* RANE relies on this court's interpretation of G. L. c. 176B, § 4, which governs contracts between corporations such as Blue Cross and physicians and other professional providers, to argue that Blue Cross cannot deny RANE a contract by reason of any unfair or arbitrary discrimination. See *Blue Shield of Mass. v. Board of Review in the Div. of Ins.*, 22 Mass. App. Ct. 160, 167 (1986). RANE acknowledges, in its brief, that G. L. c. 176A, § 5, which governs contracts between non-profit hospital service corporations and institutional providers, rather than G. L. c. 176B, § 4, is applicable to this dispute but argues that our interpretation of G. L. c. 176B, § 4, compels a similar reading of G. L. c. 176A, § 5.

The absence of an express prohibition against "unfair or arbitrary discrimination" in the award of contracts in G. L. c. 176A, § 5, distinguishes it from G. L. c. 176B, § 4. Indeed, the language authorizing Blue Cross to enter into contracts with institutional providers is permissive, and, in different contexts, it has been recognized that such relationships are "voluntary on both sides." *Commonwealth v. Mercy Hosp.*, 364 Mass. 515, 518 (1974). Cf. *Goddard Memorial Hosp. v. Rate Setting Commn.*, 403 Mass. at 743-744. We, thus, acknowledge that Blue Cross generally may exercise its reasonable discretion in determining whether to enter into a contract with a particular institutional health care provider under G. L. c. 176A.

We do not think, however, the instant case falls within the general rule. RANE's application for a "determination of need" from the Department of Public Health was approved on August 11, 1988, on the express condition that RANE "shall not consider ability to pay or insurance status in the patient selection process."[4] See 105 Code Mass. Regs. § 100 (1986). RANE, therefore, was obliged to serve patients who were Blue Cross subscribers. Blue Cross was aware of the condition imposed on RANE and of the fact that its sub-

---

[4]Although there was some brief testimony at trial that such conditions have appeared in other determinations of need, the record does not indicate whether such conditions are common.

scribers were receiving MRI scans (a total of 2,200 of them over a two-year period) from RANE. Blue Shield properly paid the physicians who evaluated the MRI scans. During the same period, Blue Cross paid nothing for the technical component of the same scans. There is no dispute that RANE satisfied all of Blue Cross's generally applicable criteria for MRI providers. To the extent that Blue Cross subscribers were entitled to the technical services and received them from RANE, and RANE was not compensated for them, RANE suffered a loss, and Blue Cross received a windfall.

But for the statutory scheme, in such a situation we might be inclined to rule in RANE's favor and award the fair value of its services on the basis of the traditional common law theory of unjust enrichment. Restatement of Restitution § 1 (1936). Cf. *Salamon* v. *Terra*, 394 Mass. 857, 859 (1985). The statute, however, contemplates reimbursement of certain providers without a contract only in very limited circumstances not present here.[5] Considering the over-all regulatory scheme and the interests of fairness, we think this case presents an exception to the general rule in G. L. c. 176A, § 5, that Blue Cross may refuse to enter into a contract with an institutional provider. We conclude that, for a period at least as long as RANE was required to, and did, serve Blue Cross subscribers, and so long as RANE satisfied Blue Cross's criteria for MRI services, Blue Cross had an obligation to offer RANE a DIF-1 contract so that it could be paid.

2. *RANE's claims under G. L. c. 93A and G. L. c. 176D, § 2.* There is ample support in the record for the crucial underlying facts found by the judge with respect to the G. L.

---

[5]General Laws c. 176A, § 5, provides for such contracts and requires advance approval by the Rate Setting Commission of the rates of payment set forth in the contracts. General Laws c. 176A, § 1, however, provides: "Nothing in this chapter shall prevent such a corporation from reimbursing a subscriber for services received in a non-participating hospital within or outside the commonwealth in the event of accident, illness or maternity or, upon the written direction of the subscriber, from making payment to said hospital for such services. . . ."

c. 93A claim: that Blue Cross refused to enter into a DIF-1 contract with RANE based upon its experience with another hospital, some of whose principals were also principals of RANE, and its interest in avoiding costly disputes in the future. The judge heard the witnesses and considered a substantial amount of documentary evidence, and we cannot say her conclusions that Blue Cross did not act arbitrarily and did not engage in any unfair or deceptive act or practice were clearly erroneous. See, e.g., *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979). We agree with the judge that none of the other statutes relied upon by RANE provides a basis for relief.

Accordingly, we remand the case to the Superior Court for a determination of damages due RANE for Blue Cross's failure to enter into a DIF-l contract with RANE. As to the other counts of the complaint, we affirm the judgment for Blue Cross.

*So ordered.*

BROWN, J. (concurring). I write separately, not because I am troubled by the majority's reasoning, but because I think that, in this era of rapidly rising health care costs (with all the attendant scrutiny and study focused on them), physicians or other medical practitioners should not refer their own patients to major medical testing laboratories or facilities, particularly such an MRI unit as here, owned by them.[1] I cast no aspersions on the parties to this appeal, but it cannot be gainsaid that such a practice is fraught with danger and invites suspicion. See, in this regard, Florida's Medical Practice Statute, Fla. Stat. § 458.327(2)(c) (1993), making

---

[1]The certificate of need for the instant MRI facility provides:

"The Department found that because RANE is a limited partnership comprised of neurologists and neurosurgeons, a condition should be attached to the approval of RANE's MRI application requiring that all patients referred to Merrimack Valley MRI be informed in writing that RANE physicians have a financial interest in the facility and that patients are free to seek MRI services in a number of alternative settings."

criminal, with certain exceptions, referrals to entities in which the referring practitioner has an equity interest of ten or more percent "unless, prior to such referral, the physician notifies the patient of his financial interest and of the patient's right to obtain such goods or services at the location of the patient's choice." See also G. L. c. 111, § 25C, third par., as inserted by St. 1993, c. 350, § 4. But see Medicare & Medicaid Guide (CCH) par. 13,921, at 5669 (1994). The Hippocratic oath commands the physician "never [to] do harm." Introducing an entrepreneurial mentality — "thou shall make as much money as the system will allow" — seems to cut the other way.