421 Mass. 731                                    731

Rehab Associates of New England v. Blue Cross & Blue Shield of Massachusetts, Inc.

REHAB ASSOCIATES OF NEW ENGLAND *vs.* BLUE CROSS &
BLUE SHIELD OF MASSACHUSETTS, INC.

Suffolk. December 7, 1995. - January 22, 1996.

Present: LIACOS, C.J., ABRAMS, O'CONNOR, GREANEY, & FRIED, JJ.

*Hospital Service Corporation. Medical Service Corporation. Administrative Law*, Medical service corporation. *Consumer Protection Act*, Medical service corporation.

Nothing in G. L. c. 176A, § 5, required a hospital service corporation to enter into a contract for the provision of health care services with a certain institutional provider of such services, and any provision of G. L. c. 176B to the contrary was applicable to health care service providers who were physicians or other professionals, that is, not institutions. [734-735]

Nothing in a condition included by the Department of Public Health in a "determination of need" approval of a health facility required a conclusion that the facility had a right to contract with a certain hospital service corporation for reimbursement of costs of health care services provided by the facility. [735]

The conclusion of a Superior Court judge that a hospital service corporation did not violate G. L. c. 93A by refusing to contract with a certain health care facility was not clearly erroneous. [735]

CIVIL ACTION commenced in the Superior Court Department on March 21, 1990.

The case was heard by *Barbara A. Dortch-Okara*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Edward J. Dailey* for the defendant.

*Rudolph F. Pierce* for the plaintiff.

FRIED, J. In this case, we determine whether Blue Cross and Blue Shield of Massachusetts, Inc. (Blue Cross), violated G. L. c. 176B, § 4 (1994 ed.); G. L. c. 176D, §§ 2, 3 (4) and 3 (7) (1994 ed.); and G. L. c. 93A, § 11 (1994 ed.), when it

refused to contract with the plaintiff, Rehab Associates of New England (RANE).

On March 21, 1990, RANE filed a complaint in the Superior Court seeking a declaratory judgment, injunctive relief, and damages for Blue Cross's alleged statutory violations. After a jury-waived trial, the judge entered judgment for Blue Cross on all counts. The judge reasoned that RANE has no statutory right under G. L. c. 176A (1994 ed.) to a contract with Blue Cross and that it failed to make out a claim of unfair or deceptive acts or practices under G. L. c. 93A or c. 176D. RANE appealed. The Appeals Court reversed reasoning that "Blue Cross had an obligation to enter into a contractual relationship with RANE." *Rehab Assocs. of New England* v. *Blue Cross & Blue Shield of Mass., Inc.,* 38 Mass. App. Ct. 62, 63 (1995). We granted Blue Cross's application for further appellate review and now affirm the judgment of the Superior Court.

RANE operates a freestanding magnetic resonance imaging (MRI) clinic, Merrimack Valley MRI, in Methuen which serves eastern Massachusetts and southern New Hampshire.[1] In 1988, the Department of Public Health (department) approved RANE for a "determination of need," as required by G. L. c. 111, § 25C (1994 ed.), to operate the MRI clinic.[2] The determination of need included a condition, not required by the statute, that, "[f]or Massachusetts residents, RANE shall not consider ability to pay or insurance status in the patient selection process." On March 1, 1989, Merrimack Valley MRI began operating its MRI, and has administered approximately 2,200 scans to patients who were

---

[1]Magnetic resonance imaging is a noninvasive procedure that allows visualization of organs and tissues not well visualized by X-ray and ultra sound techniques. The equipment is highly sophisticated and very expensive.

[2]The determination of need for a new facility turns on its financial and operational feasibility, and an assessment of alternative ways of providing health care services to the population involved. See G. L. c. 111, § 25C (1994 ed.).

Blue Cross subscribers during the time period relevant to this dispute.

The billing of the services of the MRI clinic consists of two components: (1) a technical component which covers the use of the equipment and facilities, and (2) a professional component which covers physicians' services, such as interpreting the results rendered in connection with the scans. While Blue Cross, by agreement, reimbursed RANE for the professional component of the cost associated with the operation of the MRI, the technical component of the cost was not covered by agreement. Accordingly, RANE was not reimbursed for these costs in spite of the fact that the contracts Blue Cross offered its subscribers provided coverage for the technical costs associated with the health care services provided to those subscribers.

In July, 1989, RANE, on behalf of Merrimack Valley MRI, sought to contract with Blue Cross, a nonprofit hospital and medical service corporation organized under G. L. c. 176A, for reimbursement of the technical costs associated with the administration of its MRIs. Although RANE successfully complied with Blue Cross's requests with respect to both the requirements of the contract and an on-site inspection, Blue Cross suspended the application process "pending review and/or resolution of issues Blue Cross . . . has with Northeast Rehab Hospital." On February 7, 1990, Blue Cross informed RANE that it was not in its "best business interests" to accept RANE's offer to contract.

Blue Cross made the connection between Northeast Rehabilitation Hospital (hospital) and RANE because the majority of RANE's partners controlled forty-nine per cent of the hospital and were involved in the administration of the hospital. Since 1988, Blue Cross and the hospital administration had been involved in a dispute over the hospital's application of Blue Cross's medical necessity criteria. Although Blue Cross and the hospital had settled this dispute, Blue Cross denied RANE's application for technical reimbursement because it wanted to avoid further dealings with the principals of RANE.

RANE claims that it has a right to contract with Blue Cross under G. L. c. 176A and c. 176B. These statutes, among other things, govern the relationship between Blue Cross, a hospital service corporation, and various health care providers, such as hospitals, institutions, and physicians. Chapter 176A, § 5, provides in part: "In providing reimbursement for health services other than hospital services, any hospital service corporation may enter into contracts for the furnishing of such health services with providers thereof." General Laws c. 176B, § 4, reads: "Any medical service corporation may enter into contracts with . . . participating physicians . . . and other providers of health services licensed under the laws of the commonwealth . . . ." This section also requires that "no participating provider shall be denied the right to enter into any agreement with any medical service corporation by reason of any unfair or arbitrary discrimination."

As it must, RANE concedes that G. L. c. 176A, § 5, governs its contractual relationship with Blue Cross. The plain language of that provision, reinforced by its comparison to G. L. c. 176B, § 4, which governs Blue Cross's relationship with physicians and other professional providers, compels the conclusion that Blue Cross has no statutory duty to contract with RANE. See *Rehab Assocs. of New England, supra* at 66. Blue Cross's decision to contract with an institutional provider is discretionary. G. L. c. 176A, § 5. See *Goddard Memorial Hosp.* v. *Rate Setting Comm'n*, 403 Mass. 736, 743-744 (1989) (recognizing that the contractual relationship governed by G. L. c. 176A is "voluntary on both sides"), quoting *Commonwealth* v. *Mercy Hosp.*, 364 Mass. 515, 518 (1974). These statutory provisions represent a series of finely wrought distinctions and compromises, arrived at no doubt after consultation and negotiations with representatives of the affected interests. The situation and interests of physicians and other professionals are not the same as that of institutions. Accordingly, we perceive no warrant to transplant the limitation on Blue Cross's contractual discretion in

c. 176B, § 4, into the provisions of c. 176A, § 5, as RANE invites us to do.

RANE raises an additional argument. RANE asserts that because the "determination of need" application was approved on the condition that RANE "not consider ability to pay or insurance status in the patient selection process," and Blue Cross refuses to provide RANE reimbursement for the technical component of the MRI scans, RANE must absorb the costs associated with the technical component of Blue Cross patient scans while Blue Cross realizes the benefit of having its insureds cared for without paying for the costs associated with the technical component of the scans. The statutory scheme, RANE maintains, should not allow this unfair result. Since the Legislature may have considered institutions better able than professionals to take care of themselves in bargaining with health service corporations, the anomaly, if it is one, is not as great as RANE asserts. Moreover, RANE interprets here the condition in the "determination of need" approval quite stringently in order to heighten the anomaly. Its interpretation, however, is not the only way to understand that passage. It may be that by that condition the department intended to distinguish between those persons without any insurance at all and those with insurance, rather than between those with insurance from which the service provider can receive total reimbursement and those with insurance from which the service provider can collect only a partial reimbursement. We are not inclined to give a definitive interpretation of this condition today; but we do not think that RANE's reading of the condition is so obviously correct as to compel us to reconsider the provisions of G. L. c. 176A, § 5.

Finally, we agree with the Appeals Court that the judge's determination that RANE has not made out a claim under G. L. c. 176D, § 2, or G. L. c. 93A, was not clearly erroneous. *Rehab Assocs. of New England, supra* at 67-68.

Accordingly, we affirm the judgment for Blue Cross on all counts.

*So ordered.*